**FILED**
**NOVEMBER 13, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07 C 6428**

**JUDGE FILIP**
**MAGISTRATE JUDGE COX**

**J. N.**

# Exhibit A

05/10/2005 11:09 8663665689 SERVICING PAGE 02/07



**Ameritech Credit Corporation**
**DBA: SBC Capital Services**
2000 W. SBC Center Drive
Hoffman Estates, IL 60195
Office: 800/346-8082
Fax: 847/427-4963

# CompleteLease ℠ Agreement

Number: 001-3814200-001
Dated: 5-10-05

### Lessee

| Customer full legal name | | Trade name, if applicable | |
|---|---|---|---|
| WTL FINANCIAL, INC. | | | |
| Telephone number | Fax number | State of Formation | Federal Employer Identification Number |
| 800-306-9849 | 800-588-0148 | | |
| Contact Name | | E-Mail Address | |
| CHRISTOPHER WARREN | | CHRISTOPHER@WTLFINANCIAL.NET | |
| Headquarter Address | City | State | Zip | County |
| 9300 TECH CENTER DRIVE, #160 | SACRAMENTO | CA | 95826 | |
| Equipment location, if different from above | City | State | Zip | County |

### Equipment Detail

Equipment Description (include make, model, serial no., as more specifically described on any equipment purchase agreements or purchase orders):
MICS 6.1 SOFTWARE, T7208 AND T7316E PHONES, DTI, CALLPILOT 150 VOICE MAIL SYSTEM, ALL WITH RELATED PERIPHERALS, SHIPPING AND INSTALLATION; STRUCTURED CABLING SYSTEM, LABOR AND MATERIAL.
Equipment Supplier SBC BUSINESS COMMUNICATIONS SERVICES AND SBC DATACOMM, INC.

### Schedule of Rental Payments

Purchase option (Check one):
☒ Fair Market Value (FMV) ☐ One Dollar ☐ Other:

| Down Payment (if applicable)* | Term of Lease (in months) | Total number of payments: 36 ☐ In Advance* ☒ In Arrears |
|---|---|---|
| $4654.27 (plus applicable taxes) | 36 | |

*Payable to SBC Capital Services and due upon execution of this Agreement.

Payment frequency:
☒ Monthly ☐ Quarterly
☐ Other (please describe)

Payments**: First 36 at $1226.96 (including applicable taxes)
Remaining at $_____ (plus applicable taxes)
**Payments may be indexed up until lease commencement.

### Acknowledgement

Lessee hereby certifies that he/she has read and agrees to all of the terms and conditions set forth on pages 1-3 of the CompleteLease ℠ Agreement.

### Accepted By

THIS LEASE IS NOT BINDING UNTIL ACCEPTED BY LESSOR.

| Lessee Name | Lessor Name |
|---|---|
| WTL FINANCIAL, INC. | AMERITECH CREDIT CORPORATION DBA: SBC CAPITAL SERVICES |
| Name and Title (please print) | Name and Title (please print) |
| X Christopher Warren President | Kris Larsen Mgr MEP |
| Signature | Signature |
| X | |

### Unconditional Continuing Personal Guaranty

The undersigned (if more than one, then jointly and severally) unconditionally and irrevocably guarantees to Lessor and its successors and assigns, the prompt payment of all sums due under this Lease and further guarantees the performance by Lessee of all the terms and conditions thereunder, regardless of any invalidity or unenforceability thereof. The undersigned agrees to pay all costs and expenses, including but not limited to attorney's fees, incurred by Lessor in enforcing this Lease and the Guaranty. The undersigned waives notice of acceptance, presentment, demand, protest, notice of protest or notice of default and acknowledges that Lessor may proceed directly against the undersigned without first proceeding against Lessee. The undersigned waives trial by jury and consents and submits to personal jurisdiction in the state and/or federal courts of Illinois and consents to venue in any county in which Lessor maintains an office. This guaranty shall bind the heirs, representatives, successors and assigns of the undersigned.

| Guarantor #1 name and home address (please print) | Guarantor #2 name and home address (please print) |
|---|---|
| CHRISTOPHER WARREN | |
| Signature (Individually; no titles) | Date | Signature (Individually; no titles) | Date |
| X | X5/10/05 | | |

EXHIBIT A

MAY-10-05 12:36 FROM-AMERITECH CAPITAL 847-290-0480 T-829 P.03/09 F-331

## Terms and Conditions

**1. LEASE** - Subject to the terms and conditions of this CompleteLease Agreement (the "Lease"), Lessee agrees to lease from Lessor, the equipment (including all replacements, repairs, attachments and additions incorporated therein or affixed hereto, collectively the "Equipment") described on page 1 of this Lease. The Lease shall commence on the date the Equipment is accepted by the Lessee if it falls on the first day of a month ("Commencement Date") and shall continue for the number of months specified in the Lease ("Initial Term"). If the Commencement Date is other than the first day of the month, the Lessee shall make an initial prorated rental payment from the Commencement Date (including such date) through the last day of such month and the Initial Term shall commence on the first day of the following month.

**2. RENT** - During the Initial Term and any renewal term of the Lease, Lessee agrees to pay Lessor total rent equal to the aggregate number of rental payments multiplied by the amount of each payment (plus taxes) specified on page 1 of the Lease. The due date of the first rent payment is the date upon which the Equipment is delivered to Lessee or any later date designated by Lessor. Restrictive endorsements on checks sent to Lessor will not reduce Lessee's obligations to Lessor.

**3. NON-CANCELABLE LEASE** - Lessee's obligation to make Lease payments and to pay any other amounts due hereunder shall be ABSOLUTE AND UNCONDITIONAL and shall not be subject to any delay, cancellation, termination, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever. This is an irrevocable Lease for the full term and cannot be cancelled.

**4. DELIVERY, INSTALLATION AND ACCEPTANCE** - Lessee understands that Lessor is not responsible for delivery or installation. Lessee holds Lessor harmless from specific performance of this Lease and from any damages if for any reason the manufacturer, supplier, vendor or distributor (collectively referred to in this lease as "Vendor") delays in delivery, or if the Equipment is unsatisfactory. After delivery of the Equipment to Lessee or after installation, if installation is included, Lessee shall have no more than ten (10) days to test the Equipment and deliver a signed certificate of acceptance or written notification of material defect(s) to Lessor. If Lessee fails to deliver a signed certificate of acceptance or written notice of material defect(s) to Lessor within this timeframe, the Equipment shall be deemed accepted by the Lessee as of the tenth day.

**5. WARRANTY DISCLAIMER** - LESSEE AGREES THAT IT HAS SELECTED THE VENDOR AND EACH ITEM OF EQUIPMENT BASED UPON ITS OWN JUDGEMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSOR MAKES NO WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND LESSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE EQUIPMENT. WARRANTIES MADE BY THE VENDOR TO THE LESSOR SHALL INURE TO THE BENEFIT OF THE LESSEE, TO THE EXTENT ASSIGNABLE. IF THE EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED, WARRANTED OR GUARANTEED BY VENDOR, OR IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE ITS CLAIM AND ANY COMPLAINT THEREFOR AGAINST VENDOR, AND NOT AGAINST LESSOR AND SHALL CONTINUE TO MAKE ALL RENTAL AND OTHER PAYMENTS REQUIRED HEREUNDER. LESSOR DISCLAIMS ANY WARRANTY THAT THE EQUIPMENT IS DELIVERED FREE OF THE RIGHTFUL CLAIM OF ANY PERSON BY WAY OF INFRINGEMENT OR SIMILAR CLAIM. LESSEE ACKNOWLEDGES THAT VENDOR IS NOT AN AGENT OF LESSOR AND STATEMENTS OR REPRESENTATIONS OF THE VENDOR SHALL NOT BIND OR AFFECT LESSOR, AND SHALL NOT AFFECT THE LESSEE'S OBLIGATIONS UNDER THIS LEASE. LESSOR ASSUMES NO RESPONSIBILITY FOR THE INSTALLATION, ADJUSTING OR SERVICING OF THE EQUIPMENT.

**6. NO AGENCY** - Lessee acknowledges that (1) there is no agency or joint venture between Lessor and the Vendor; (2) neither the Vendor nor any other person is authorized to act on Lessor's behalf; and (3) ONLY AN INDIVIDUAL AUTHORIZED BY LESSOR IS PERMITTED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE.

**7. ASSIGNMENT** - LESSEE WILL NOT SELL, ASSIGN, SUBLET, PLEDGE OR OTHERWISE ENCUMBER, OR PERMIT A LIEN TO EXIST ON OR AGAINST ANY INTEREST IN THIS LEASE, OR THE EQUIPMENT, OR REMOVE THE EQUIPMENT FROM ITS LOCATION REFERRED TO ON PAGE 1, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT. LESSOR MAY ASSIGN ITS INTEREST IN THIS LEASE AND SELL OR GRANT A SECURITY INTEREST IN ALL OR ANY PART OF THE EQUIPMENT WITHOUT LESSEE'S CONSENT. LESSEE AGREES THAT IN ANY ACTION BROUGHT BY AN ASSIGNEE AGAINST LESSEE TO ENFORCE LESSOR'S RIGHTS HEREUNDER, LESSEE WILL NOT ASSERT AGAINST SUCH ASSIGNEE AND EXPRESSLY WAIVES AS AGAINST ANY ASSIGNEE, ANY BREACH OR DEFAULT ON THE PART OF LESSOR HEREUNDER OR ANY OTHER DEFENSE, CLAIM OR SET-OFF WHICH LESSEE MAY HAVE AGAINST LESSOR EITHER HEREUNDER OR OTHERWISE. NO SUCH ASSIGNEE SHALL BE OBLIGATED TO PERFORM ANY OBLIGATION, TERM OR CONDITION REQUIRED TO BE PERFORMED BY LESSOR HEREUNDER.

**8. TITLE** - Lessor is the owner of the Equipment and has title to the Equipment. If any other person attempts to claim ownership of the Equipment by asserting that claim against Lessee or through Lessee, Lessee agrees, at its expense, to protect and defend Lessor's title to the Equipment. Lessee further agrees that it will at all times keep the Equipment free from any legal process, encumbrance or lien whatsoever, and Lessee shall give Lessor immediate notice if any legal process, encumbrance or lien is asserted or made against the Equipment.

**9. SECURITY INTEREST** - To secure payments hereunder, Lessee grants to Lessor a security interest in the Equipment and all additions, attachments, accessions and substitutions thereof.

**10. QUIET ENJOYMENT** - Provided that no Event of Default (as defined in Section 19 herein) has occurred or is continuing hereunder, Lessor shall not interfere with Lessee's right of quiet enjoyment and use of the Equipment.

**11. CARE, USE AND LOCATION** - Lessee is responsible for installing and keeping the Equipment free from damage and in good working order and repair. Lessee will keep and use the Equipment only at the address shown on page 1, and will only use it for business purposes and in compliance with all applicable laws. Lessee will not make any alterations to or relocate the Equipment without Lessor's prior written consent, nor will Lessee permanently attach the Equipment to any real estate. At the termination of this Lease, Lessee will return the Equipment to Lessor at a location designated by Lessor, at Lessee's expense. Lessee shall, at Lessor's request, affix to the Equipment tags, decals or plates furnished by Lessor indicating Lessor's ownership and Lessee shall not permit their removal or concealment.

**12. RISK OF LOSS** - From the date the Equipment is delivered to Lessee until it is returned to Lessor, Lessee shall bear the entire risk of loss, theft, destruction or damage of the Equipment or any part thereof from any cause whatsoever. No loss, theft, destruction or damage of the Equipment shall relieve Lessee of the obligation to pay rent or any other obligation under this Lease. In the event of loss, theft, destruction or damage of any kind to any item of Equipment, Lessee shall notify Lessor and at the option of Lessor, Lessee shall (a) place the Equipment in good condition and repair, or (b) replace the Equipment with identical equipment of at least equal value in good condition and repair with clear title given to Lessor, or (c) pay Lessor an amount equal to 1) all rent and other amounts then due and owing, and 2) the unpaid balance of rentals for the remaining term of the Lease (discounted to present value at a rate of 3%) plus an amount equal to the estimated Fair Market Value (as defined herein) of the Equipment at the time of the loss.

**13. TAXES AND FEES** - Lessee shall pay when due and shall indemnify Lessor for, and hold Lessor harmless from and against all federal, state, and local filing fees, assessments, taxes including without limitation, sales, lease, use, excise and personal property taxes (excluding only taxes payable with respect to Lessor's net income) which may be imposed on the Lessor arising in any way out of the ownership, use, possession or leasing of the Equipment. Such amounts shall be considered additional rent and shall be payable by Lessee upon demand by Lessor. Lessee acknowledges that Lessor may be taking certain tax benefits available to the owner of the Equipment, including depreciation benefits under the

Page 2 of 3                                                  Lessee Initials ___

Modified Accelerated Cost Recovery System set forth in the Internal Revenue Code of 1986, as amended ("Tax Benefits"). Lessee agrees that it will take no action inconsistent with the foregoing and that it will indemnify Lessor on an after-tax basis for any loss of Tax Benefits due to Lessee's action. Upon Lessor's written notice to Lessee that a loss of Tax Benefits has occurred, Lessee will reimburse Lessor for the amount of the tax loss. The obligations under this section shall survive the expiration or termination of this Lease.

**14. INDEMNITY** - Lessee hereby indemnifies Lessor and holds Lessor harmless from any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney's fees, arising out of or connected with the Equipment or the use thereof, including without limiting the generality of the foregoing, its manufacture, selection, delivery, possession, use, leasing, fitness, operation, return, or latent or other defects, whether or not discoverable, or arising out of any failure by Lessee to perform or comply with any of the terms and conditions of this Lease. The indemnities contained herein shall continue in full force and effect notwithstanding the termination of this Lease, whether by expiration of time, by operation of law, or otherwise. Lessee is an independent contractor and nothing contained in this Lease shall authorize Lessee or any other person to operate or use any Equipment so as to incur any obligation on behalf of Lessor or impose any liability on Lessor.

**15. INSURANCE** - Lessee shall obtain and maintain on or with respect to the Equipment at its own expense (a) liability insurance insuring against liability for bodily injury and property damage and (b) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the original cost of the Equipment. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies to Lessee, naming Lessor as an additional insured and loss payee thereunder. Each such policy shall be in such form and with such insurers as may be satisfactory to Lessor, including clauses requiring the insurer to give to Lessor at least 30 days prior written notice of any alteration or cancellation thereof.

**16. END OF TERM OPTIONS** - Provided Lessee has fulfilled all of its obligations herein and is not in default hereunder, Upon expiration of a FMV Lease, the Lessee may, upon irrevocable written notice to Lessor at least ninety (90) but not more than one hundred eighty (180) days prior to the expiration of the Initial Term, purchase all (but not less than all) of the Equipment at its Fair Market Value. Fair Market Value is the price at which a buyer under no compulsion to buy would purchase the Equipment at retail from a seller under no compulsion to sell. In the event the "One Dollar" or "Other" box is indicated, Lessee shall pay the corresponding amount to Lessor to release the security interest referred to in Section 9.

**17. EXPIRATION; EXTENSION** - SUBJECT TO SECTION 16 HEREOF, UNLESS LESSEE NOTIFIES LESSOR IN WRITING NINETY (90) DAYS PRIOR TO THE EXPIRATION OF THIS LEASE OF ITS INTENTION TO TERMINATE THIS LEASE AT ITS EXPIRATION DATE (ONLY IF THE "FMV" BOX IS INDICATED), THEN THIS LEASE SHALL BE EXTENDED UPON ALL OF THE TERMS AND CONDITIONS AS STATED HEREIN FOR A PERIOD OF (90) DAYS FROM ITS EXPIRATION DATE WITHOUT THE NECESSITY OF THE EXECUTION OF ANY FURTHER DOCUMENTS AND SHALL CONTINUE FROM MONTH TO MONTH THEREAFTER UNDER THE SAME TERMS AND CONDITIONS UNTIL TERMINATED.

**18. REDELIVERY OF EQUIPMENT** - Provided ninety (90) days prior written notice has been given to Lessor, upon termination of this Lease, Lessee shall disconnect, properly package for transportation and return all (not part) of the Equipment, freight prepaid, to a location designated by Lessor, in good repair, condition and working order, and be eligible for acceptance by the manufacturer or maintenance organization. If upon expiration or termination, Lessee does not immediately return the Equipment as required herein, Lessor may, at its option, (a) arrange for removal of the Equipment and Lessee agrees to pay Lessor an amount equal to two (2) rent payments, or (b) automatically renew the Lease on the same terms and conditions for successive one-year periods at the same rental as in this Lease, subject to the right of either party to terminate the Lease upon six (6) months written notice (at the expiration of such notice, Lessee will deliver the Equipment to Lessor under the terms of this section).

**19. DEFAULT AND REMEDIES** - If Lessee (a) does not pay rent within ten (10) days after the same becomes due, (b) breaches any of its representations, warranties or other obligations under the Lease, (c) is in default under any other agreement between Lessee and Lessor (d) becomes insolvent or assigns its assets for the benefit of its creditors, or (e) enters

(voluntarily or involuntarily) a bankruptcy proceeding ("Event(s) of Default"), Lessee will be in default. Upon the occurrence of an Event of Default, Lessor may require that Lessee return the Equipment to Lessor and pay the remaining balance of all of the rental payments due under this Lease, present valued using a 3% per year discount rate. If Lessee fails to return the Equipment to Lessor, in addition Lessor can also require that Lessee pay the Lessor's residual interest in the Equipment, present valued as noted above. Lessee also represents to Lessor that interest on all sums due Lessor from the date of default until paid will be at the rate of one and one-half percent (1-1/2%) per month, but only to the extent permitted by law. In addition, Lessor shall be entitled to recover from Lessee any of the remedies available under the Uniform Commercial Code ("UCC") or any other law. If Lessor refers this Lease to an attorney or collection agency for enforcement or collection, Lessee agrees to pay the cost of repossession, storing, shipping, repairing and selling the Equipment including, but not limited to, legal fees and expenses. Lessee agrees that Lessor is not required to notify Lessee that it is selling the Equipment.

**20. OTHER RIGHTS** - Lessee agrees that any delay or failure to enforce Lessor's rights under this Lease does not prevent Lessor from enforcing any rights at a later time. Lessee and Lessor intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. If this document is found not to be a Lease, then Lessee grants Lessor a security interest in the Equipment. Lessee hereby appoints Lessor, its agents, successors or assigns its true and lawful attorney-in-fact for the limited purpose of executing and filing on behalf of Lessee any and all UCC Financing Statements which in Lessor's sole discretion are necessary or proper to secure Lessor's interest in the Equipment in all applicable jurisdictions.

**21. ENTIRE AGREEMENT; CHANGES** - This Lease contains the entire agreement between Lessee and Lessor and supersedes all previous discussions and the terms and conditions of any purchase orders issued to and/or by Lessee and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by Lessee and Lessor. To the extent permitted by law, Lessor may charge Lessee a documentation and administration fee of $50.00. If for any reason this Lease does not commence. The descriptive headings hereof do not constitute a part of the Lease and no inferences shall be drawn therefrom. Whenever the context of the Lease requires, the masculine gender includes the feminine or neuter, and the singular number includes the plural, and whenever the word Lessor is used herein, it shall include all assignees of Lessor. If there is more than one Lessee named in the Lease, the liability of each shall be joint and several.

**22. NOTICES** - All of Lessee's notices to Lessor must be sent by certified mail or recognized overnight delivery service, postage prepaid, to Lessor's address stated in this Lease, or by facsimile transmission to our facsimile telephone number, with oral confirmation of receipt. Lessor's notices to Lessee may be sent first class mail, postage prepaid, to Lessee's address stated in this Lease.

**23. MISCELLANEOUS** - Lessee and Lessor intend and agree that a photocopy or facsimile of this Lease and all related documents, including but not limited to the Acceptance Certificate, with their signatures thereon shall be treated as originals, and shall be deemed to be as binding, valid, genuine and authentic as an original signature document for all purposes. This Lease is a "Finance Lease" as defined in Article 2A of the UCC.

**24. JURISDICTION** - This Lease shall be governed by the laws of the State of Illinois without regard to conflict of law principles. Any litigation arising out of or in relation to this Lease or any transaction contemplated hereby may be instituted in any federal or state court in Illinois, and Lessee waives any objection that it may now or hereafter have to venue in any such court and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any such litigation.

**25. LESSEE REPRESENTATIONS** - Lessee represents and warrants that (i) it has complete and unrestricted power to enter into this Lease, (ii) the persons executing this Lease have been duly authorized to execute this Lease on Lessee's behalf, (iii) all information supplied to Lessor is true and correct, including all credit and financial information and (iv) it is able to meet all its financial obligations, including the rent payments hereunder.

THE LOGO APPEARING ON THIS DOCUMENT IS A FEDERALLY REGISTERED TRADEMARK AND MAY NOT BE USED IN ANY WAY NOR MAY THIS DOCUMENT BE ALTERED OR MANIPULATED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF AMERITECH CREDIT CORPORATION. LESSEE MAY TRANSFER THIS DOCUMENT FROM ELECTRONIC FORMAT TO A TANGIBLE ONE BY PRINTING IT IN ITS UNALTERED STATE.

Lessee Initials [signature]

Page 3 of 3

 Ameritech Credit Corporation
DBA: SBC Capital Services
2000 W. SBC Center Drive
Hoffman Estates, IL 60195
Office: 800/346-8082
Fax:    847/427-4969

**Insurance Request**
CompleteLease℠ Agreement
Number: 001-3814200-001
Dated:  5-10-05

### Lessee

| Customer full legal name | Trade name, if applicable | | |
|---|---|---|---|
| WTL FINANCIAL, INC. | | | |
| Telephone number | Fax number | State of Formation | Federal Employer Identification Number |
| 800-308-9848 | 800-588-0145 | | |
| Contact Name | | E-Mail Address | |
| CHRISTOPHER WARREN | | CHRISTOPHER@WTLFINANCIAL.NET | |
| Headquarter Address | City | State | Zip | County |
| 5900 TECH CENTER DRIVE, #150 | SACRAMENTO | CA | 95828 | |
| Equipment location, if different from above | City | State | Zip | County |

### Equipment Detail

Equipment Description (include make, model, serial no., as more specifically described on any equipment purchase agreements or purchase orders)
MICS, 6.1 SOFTWARE, T7208 AND T7316E PHONES, DTI, CALLPILOT 150 VOICE MAIL SYSTEM, ALL WITH RELATED PERIPHERALS, SHIPPING AND INSTALLATION; STRUCTURED CABLING SYSTEM, LABOR AND MATERIAL

Equipment Supplier
SBC BUSINESS COMMUNICATIONS SERVICES AND SBC DATACOMM, INC.

### Insurance

| Insurance Company/Agency | | Agent/Broker Name | | |
|---|---|---|---|---|
| X | | X | | |
| Address | City | State | Zip | Telephone Number |
| X | X | X | X | X |
| Carrier (if different from above) | Policy Number | | Expiration Date | |
| X | X | | X | |

Please notify your insurance company to forward a copy of your insurance certificate to our office.

### Policy Limits

Please amend the above policy to include coverage on the above-described Equipment as follows:

PHYSICAL DAMAGE COVERAGE in the amount of: the full replacement value of the Equipment
COMPREHENSIVE GENERAL LIABILITY COVERAGE in the amount of: $1,000,000 (combined single limit)

Please issue to Lessor at its address shown above, an endorsement to the above policy (1) naming Lessor as additional insured and loss payee, as its interest may appear on the Equipment, and (2) agreeing to give Lessor thirty (30) days prior written notice of the effective date of any alteration or cancellation of such policy.

### Acknowledgment

We appreciate your cooperation in attending to this matter as quickly as possible.

| Lessee Name |
|---|
| WTL FINANCIAL, INC. |
| Name and title (please print) |
| X Christopher Warren, President |
| Signature |
| X [signature] |

05/10/2005  11:09   8663665689                    SERVICING                                          PAGE  06/07



**Ameritech Credit Corporation**
**DBA: SBC Capital Services**
2000 W. SBC Center Drive
Hoffman Estates, IL 60196
Office:  800/346-9052
Fax:    847/427-4963

# ACCEPTANCE CERTIFICATE

To Lessor: The undersigned Lessee hereby certifies that all Equipment described in CompleteLease℠ Agreement No. 001-3814200-001 has been delivered to Lessee and installed; that the Equipment has been inspected by Lessee and is in good operating order; and that the Equipment is accepted by Lessee for all purposes under the Lease. Lessee hereby directs Lessor to pay the vendor for the Equipment.

| Lessee Name |
|---|
| WTL FINANCIAL, INC. |

**Description of equipment**
MICS, 6.1 SOFTWARE, T7208 AND T7316E PHONES, DTI, CALLPILOT 150 VOICE MAIL SYSTEM, ALL WITH RELATED PERIPHERALS, SHIPPING AND INSTALLATION; STRUCTURED CABLING SYSTEM, LABOR AND MATERIAL

| Name and title (please print) | Date |
|---|---|
| X Christopher Warren, President | X 5/10/05 |
| Signature | Lease # (Office use only) |
| X [signature] | |

Upon acceptance, please fax this certificate to the fax number above and mail to:

DEBBIE MEYERING
SBC Capital Services
2000 W. SBC Center Drive
Location No. 4C31G
Hoffman Estates, IL 60196