**FILED**
**NOVEMBER 13, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07 C 6428**

**JUDGE FILIP**
**MAGISTRATE JUDGE COX**

**J. N.**

# Exhibit E



AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Hoffman Estates, IL 60192-5000
Office: 800/346-8082
Fax: 847/427-5058

# CompleteLease (SM) Agreement

Number: 001-3814200-002
Dated: February 1, 2007

## Lessee

| Customer full legal name | | | |
|---|---|---|---|
| WTL FINANCIAL, INC. | | Trade name, if applicable | |
| Telephone number (800) 306-9849 | Fax number | State of Formation CA | Federal Employer Identification Number |
| Contact Name CHRISTOPHER WARREN | | E-Mail Address christopher@wtlfinancial.net | |
| Headquarter Address 3127 FITE CIRCLE STE E | City SACRAMENTO | State CA / Zip 95827 | County |
| Equipment location 9300 TECH CENTER DRIVE SUITE 160 | City SACRAMENTO | State CA / Zip 95826 | County |

## Equipment Detail

**Equipment Description**
Nortel CS 1000M PBX System, Tmdi Package, CP4.0 201i System, M3902 & M3904 Tel Sets, all with attachments, accessories and related peripherals, Install, Project Management, Training, Warranty, Freight and buyout of existing lease contract 3814200-001

**Equipment Supplier** SBC Business Comm Srvcs

## Schedule of Rental Payments

Purchase option: One Dollar

| Down Payment (if applicable)* (plus applicable taxes) | Term of Lease (in months) 36 | Total number of rental payments: 36 in Advance |
|---|---|---|

*Payable to AT&T Capital Services, Inc. and due upon execution of this Agreement.

Payment frequency: Monthly

Payments**: 36 at $7,011.30 (plus applicable taxes)
____ at ____ (plus applicable taxes)
**Payments may be indexed up until lease commencement.

## Acknowledgement

Lessee hereby certifies that he/she has read and agrees to all of the terms and conditions set forth on pages 1-3 of this CompleteLease ® Agreement.

Lessee Name
WTL FINANCIAL, INC.
DBA:

Name and Title (please print)
X
Signature
X

## Accepted By

THIS LEASE IS NOT BINDING UNTIL ACCEPTED BY LESSOR.

Lessor Name
AT&T CAPITAL SERVICES, INC.

Name and Title (please print)

Signature

## Unconditional Continuing Personal Guaranty

The undersigned (if more than one, then jointly and severally) unconditionally and irrevocably guarantees to Lessor and its successors and assigns, the prompt payment of all sums due under this Lease and further guarantees the performance by Lessee of all the terms and conditions thereunder, regardless of any invalidity or unenforceability thereof. The undersigned agrees to pay all costs and expenses, including but not limited to attorney's fees, incurred by Lessor in enforcing the Lease and the Guaranty. The undersigned waives notice of acceptance, presentment, demand, protest, notice of protest or notice of default and acknowledges that Lessor may proceed directly against the undersigned without first proceeding against Lessee. The undersigned waives trial by jury and consents and submits to personal jurisdiction in the state and/or federal courts of Illinois and consents to venue in any county in which Lessor maintains an office. This guaranty shall bind the heirs, representatives, successors and assigns of the undersigned.

Guarantor #1 name and home address (please print)

Guarantor #2 name and home address (please print)

Signature (Individually; no titles) | Date

Signature (Individually; no titles) | Date



EXHIBIT E

Form. Rev. 5-1-06

## Terms and Conditions

**1. LEASE** - Subject to the terms and conditions of this CompleteLease Agreement (the "Lease"), Lessee agrees to lease from Lessor, the equipment (including all replacements, repairs, attachments and additions incorporated therein or affixed hereto, collectively the "Equipment") described on page 1 of this Lease. The Lease shall commence on the date the Equipment is accepted by the Lessee if it falls on the first day of a month ("Commencement Date") and shall continue for the number of months specified in the Lease ("Initial Term"). If the Commencement Date is other than the first day of the month, the Lessee shall make an initial prorated rental payment from the Commencement Date (including such date) through the last day of such month and the Initial Term shall commence on the first day of the following month.

**2. RENT** - During the Initial Term and any renewal term of the Lease, Lessee agrees to pay Lessor total rent equal to the aggregate number of rental payments multiplied by the amount of each payment (plus taxes) specified on page 1 of the Lease. The due date of the first rent payment is the date upon which the Equipment is delivered to Lessee or any later date designated by Lessor. Restrictive endorsements on checks sent to Lessor will not reduce Lessee's obligations to Lessor.

**3. NON-CANCELABLE LEASE** - Lessee's obligation to make Lease payments and to pay any other amounts due hereunder shall be ABSOLUTE AND UNCONDITIONAL and shall not be subject to any delay, cancellation, termination, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever. This is an irrevocable Lease for the full term and cannot be cancelled.

**4. DELIVERY, INSTALLATION AND ACCEPTANCE** - Lessee understands that Lessor is not responsible for delivery or installation of the Equipment. Lessee holds Lessor harmless from specific performance of this Lease and from any damages if for any reason the manufacturer, supplier, vendor or distributor (collectively referred to in this lease as "Vendor") delays in delivery, or if the Equipment is unsatisfactory. After delivery of the Equipment to Lessee or after installation, if installation is included, Lessee shall have no more than ten (10) days to test the Equipment and deliver a signed certificate of acceptance or written notification of material defect(s) to Lessor. If Lessee fails to deliver a signed certificate of acceptance or written notice of material defect(s) to Lessor within this timeframe, the Equipment shall be deemed accepted by the Lessee as of the tenth day.

**5. WARRANTY DISCLAIMER** - LESSEE AGREES THAT IT HAS SELECTED THE VENDOR AND EACH ITEM OF EQUIPMENT BASED UPON ITS OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSOR MAKES NO WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND LESSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF, OR THE INABILITY TO USE, THE EQUIPMENT. WARRANTIES MADE BY THE VENDOR TO THE LESSOR SHALL INURE TO THE BENEFIT OF THE LESSEE, TO THE EXTENT ASSIGNABLE. IF THE EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED, WARRANTED OR GUARANTEED BY VENDOR, OR IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE ITS CLAIM AND ANY COMPLAINT THEREFOR AGAINST VENDOR, AND NOT AGAINST LESSOR AND SHALL CONTINUE TO MAKE ALL RENTAL AND OTHER PAYMENTS REQUIRED HEREUNDER. LESSOR DISCLAIMS ANY WARRANTY THAT THE EQUIPMENT IS DELIVERED FREE OF THE RIGHTFUL CLAIM OF ANY PERSON BY WAY OF INFRINGEMENT OR SIMILAR CLAIM. LESSEE ACKNOWLEDGES THAT VENDOR IS NOT AN AGENT OF LESSOR AND STATEMENTS OR REPRESENTATIONS OF THE VENDOR SHALL NOT BIND OR AFFECT LESSOR, AND SHALL NOT AFFECT THE LESSEE'S OBLIGATIONS UNDER THIS LEASE. LESSOR ASSUMES NO RESPONSIBILITY FOR THE INSTALLATION, ADJUSTING OR SERVICING OF THE EQUIPMENT.

**6. NO AGENCY** - Lessee acknowledges that (1) there is no agency or joint venture between Lessor and the Vendor; (2) neither the Vendor nor any other person is authorized to act on Lessor's behalf; and (3) **ONLY AN INDIVIDUAL AUTHORIZED BY LESSOR IS PERMITTED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE.**

**7. ASSIGNMENT** - LESSEE WILL NOT SELL, ASSIGN, SUBLET, PLEDGE OR OTHERWISE ENCUMBER, OR PERMIT A LIEN TO EXIST ON OR AGAINST ANY INTEREST IN THIS LEASE, OR THE EQUIPMENT, OR REMOVE THE EQUIPMENT FROM ITS LOCATION REFERRED TO ON PAGE 1, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT. LESSOR MAY ASSIGN ITS INTEREST IN THIS LEASE AND SELL OR GRANT A SECURITY INTEREST IN ALL OR ANY PART OF THE EQUIPMENT WITHOUT LESSEE'S CONSENT. LESSEE AGREES THAT IN ANY ACTION BROUGHT BY AN ASSIGNEE AGAINST LESSEE TO ENFORCE LESSOR'S RIGHTS HEREUNDER, LESSEE WILL NOT ASSERT AGAINST SUCH ASSIGNEE, AND EXPRESSLY WAIVES AS AGAINST ANY ASSIGNEE, ANY BREACH OR DEFAULT ON THE PART OF LESSOR HEREUNDER OR ANY OTHER DEFENSE, CLAIM OR SET-OFF WHICH LESSEE MAY HAVE AGAINST LESSOR, EITHER HEREUNDER OR OTHERWISE. NO SUCH ASSIGNEE SHALL BE OBLIGATED TO PERFORM ANY OBLIGATION, TERM OR CONDITION REQUIRED TO BE PERFORMED BY LESSOR HEREUNDER.

**8. TITLE** - Lessor is the owner of the Equipment and has title to the Equipment. If any other person attempts to claim ownership of the Equipment by asserting that claim against Lessee or through Lessee, Lessee agrees, at its expense, to protect and defend Lessor's title to the Equipment. Lessee further agrees that it will at all times keep the Equipment free from any legal process, encumbrance or lien whatsoever, and Lessee shall give Lessor immediate notice if any legal process, encumbrance or lien is asserted or made against the Equipment.

**9. SECURITY INTEREST** - To the extent applicable, and to further secure payments hereunder, Lessee grants to Lessor a security interest in the Equipment and all additions, attachments, accessions and substitutions thereof and all proceeds of the foregoing.

**10. QUIET ENJOYMENT** - Provided that no Event of Default (as defined in Section 19 herein) has occurred or is continuing hereunder, Lessor shall not interfere with Lessee's right to quiet enjoyment and use of the Equipment.

**11. CARE, USE AND LOCATION** - Lessee is responsible for installing and keeping the Equipment free from damage and in good working order and repair. Lessee will keep and use the Equipment only at the address shown on page 1, and will only use it for business purposes and in compliance with all applicable laws. Lessee will not make any alterations to or relocate the Equipment without Lessor's prior written consent, nor will Lessee permanently attach the Equipment to any real estate. At the termination of this Lease, Lessee will return the Equipment to Lessor at a location designated by Lessor, at Lessee's expense. Lessee shall, at Lessor's request, affix to the Equipment, tags, decals or plates furnished by Lessor indicating Lessor's ownership and Lessee shall not permit their removal or concealment.

**12. RISK OF LOSS** - From the date the Equipment is delivered to Lessee until it is returned to Lessor, Lessee shall bear the entire risk of loss, theft, destruction or damage to the Equipment or to any part thereof from any cause whatsoever. No loss, theft, destruction or damage to the Equipment shall relieve Lessee of the obligation to pay rent or any other obligation under this Lease. In the event of loss, theft, destruction or damage of any kind to any item of Equipment, Lessee shall notify Lessor and at the option of Lessor, Lessee shall (a) place the Equipment in good condition and repair, or (b) replace the Equipment with identical equipment of at least equal value in good condition and repair with clear title given to Lessor, or (c) pay Lessor an amount equal to 1) all rent and other amounts then due and owing, and 2) the unpaid balance of rentals for the remaining term of the Lease (discounted to present value at a rate of 3%) plus an amount equal to the estimated Fair Market Value (as defined herein) of the Equipment at the time of the loss.

**13. TAXES AND FEES** - Lessee shall pay when due and shall indemnify Lessor for, and hold Lessor harmless from and against all federal, state, and local filing fees, assessments, taxes including without limitation, sales, lease, use, excise and personal property taxes (excluding only taxes payable with respect to Lessor's net income) which may be imposed on the Lessor arising in any way out of the ownership, use, possession or leasing of the Equipment. Such amounts shall be considered additional rent and shall be payable by Lessee upon demand by Lessor.

Lessee acknowledges that Lessor may be taking certain tax benefits available to the owner of the Equipment, including depreciation benefits under the

001-3814200-002    Lessee initials ___

Modified Accelerated Cost Recovery System set forth in the Internal Revenue Code of 1986, as amended ("Tax Benefits"). Lessee agrees that it will take no action inconsistent with the foregoing and that it will indemnify Lessor on an after-tax basis for any loss of Tax Benefits due to Lessee's action. Upon Lessor's written notice to Lessee that a loss of Tax Benefits has occurred, Lessee will reimburse Lessor for the amount of the tax loss. The obligations under this section shall survive the expiration or termination of this Lease.

**14. INDEMNITY** - Lessee hereby indemnifies Lessor and holds Lessor harmless from any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney's fees, arising out of or connected with the Equipment or the use thereof, including without limiting the generality of the foregoing, its manufacture, selection, delivery, possession, use, leasing, fitness operation, return, or latent or other defects, whether or not discoverable, or arising out of any failure by Lessee to perform or comply with any of the terms and conditions of this Lease. The indemnities contained herein shall continue in full force and effect notwithstanding the termination of this Lease, whether by expiration of time, by operation of law, or otherwise. Lessee is an independent contractor and nothing contained in this Lease shall authorize Lessee or any other person to operate or use any Equipment so as to incur any obligation on behalf of Lessor or impose any liability on Lessor.

**15. INSURANCE** - Lessee shall obtain and maintain on or with respect to the Equipment at its own expense (a) liability insurance insuring against liability for bodily injury and property damage and (b) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the original cost of the Equipment. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies to Lessee, naming Lessor as an additional insured and loss payee thereunder. Each such policy shall be in such form and with such insurers as may be satisfactory to Lessor, including clauses requiring the insurer to give to Lessor at least 30 days prior written notice of any alteration or cancellation thereof.

**16. END OF TERM OPTIONS** - Provided Lessee has fulfilled all of its obligations herein and is not in default hereunder, upon expiration of a FMV Lease, the Lessee may, upon irrevocable written notice to Lessor at least ninety (90) but not more than one hundred eighty (180) days prior to the expiration of the Initial Term, purchase all (but not less than all) of the Equipment at its Fair Market Value. Fair Market Value is the price at which a buyer under no compulsion to buy would purchase the Equipment at retail from a seller under no compulsion to sell. In the event the "One Dollar" or "Other" box is indicated, Lessee shall pay the corresponding amount to Lessor to release the security interest referred to in Section 9.

**17. EXPIRATION; EXTENSION** - SUBJECT TO SECTION 16 HEREOF, UNLESS LESSEE NOTIFIES LESSOR IN WRITING NINETY (90) DAYS PRIOR TO THE EXPIRATION OF THIS LEASE OF ITS INTENTION TO TERMINATE THIS LEASE AT ITS EXPIRATION DATE (ONLY IF THE "FMV" BOX IS INDICATED), THEN THIS LEASE SHALL BE EXTENDED UPON ALL OF THE TERMS AND CONDITIONS AS STATED HEREIN FOR A PERIOD OF (90) DAYS FROM ITS EXPIRATION DATE WITHOUT THE NECESSITY OF THE EXECUTION OF ANY FURTHER DOCUMENTS AND SHALL CONTINUE FROM MONTH TO MONTH THEREAFTER UNDER THE SAME TERMS AND CONDITIONS UNTIL TERMINATED.

**18. REDELIVERY OF EQUIPMENT** - Provided ninety (90) days prior written notice has been given to Lessor, upon termination of this Lease, Lessee shall disconnect, properly package for transportation and return all (not part) of the Equipment, freight prepaid, to a location designated by Lessor, in good repair, condition and working order, and be eligible for acceptance by the manufacturer or maintenance organization. If upon expiration or termination, Lessee does not immediately return the Equipment as required herein, Lessor may, at its option, (a) arrange for removal of the Equipment and Lessee agrees to pay Lessor an amount equal to two (2) rent payments, or (b) automatically renew the Lease on the same terms and conditions for successive one-year periods at the same rental as in this Lease, subject to the right of either party to terminate the Lease upon six (6) months written notice (at the expiration of such notice, Lessee will deliver the Equipment to Lessor under the terms of this section).

**19. DEFAULT AND REMEDIES** - If Lessee (a) does not pay rent within ten (10) days after the same becomes due, (b) breaches any of its representations, warranties or other obligations under the Lease, (c) is in default under any other agreement between Lessee and Lessor (d) becomes insolvent or assigns its assets for the benefit of its creditors, or (e) enters voluntarily or involuntarily a bankruptcy proceeding ("Event(s) of Default"), Lessee will be in default. Upon the occurrence of an Event of Default, Lessor may require that Lessee return the Equipment to Lessor and pay the remaining balance of all of the rental payments due under this Lease. If

Lessee fails to return the Equipment to Lessor, in addition Lessor can require that Lessee pay the Lessor's residual interest in the Equipm Lessee also represents to Lessor that interest on all sums due Lessor from date of default until paid will be at the rate of one and one-half percent 1/2%) per month, but only to the extent permitted by law. In addition, Les shall be entitled to recover from Lessee any of the remedies available ur the Uniform Commercial Code ("UCC") or any other law. If Lessor refers Lease to an attorney or collection agency for enforcement or collect Lessee agrees to pay the cost of repossession, storing, shipping, repairing selling the Equipment including, but not limited to, attorneys' fees expenses. Lessee agrees that Lessor is not required to notify Lessee that selling the Equipment.

**20. OTHER RIGHTS** - Lessee agrees that any delay or failure to enfo Lessor's rights under this Lease does not prevent Lessor from enforcing a rights at a later time. Lessee and Lessor intend this Lease to be a valid a legal document, and agree that if any part is determined to be unenforceab all other parts will remain in full force and effect. If this document is found r to be a Lease, then Lessee grants Lessor a security interest in the Equipme Lessee hereby appoints Lessor, its agents, successors or assigns its true ar lawful attorney-in-fact for the limited purpose of executing and filing on beh; of Lessee any and all UCC Financing Statements which in Lessor's so discretion are necessary or proper to secure Lessor's interest in the Equipme in all applicable jurisdictions.

**21. ENTIRE AGREEMENT; CHANGES** - This Lease contains the entir agreement between Lessee and Lessor and supersedes all previou discussions and the terms and conditions of any purchase orders issued b and/or by Lessee and it may not be altered, amended, modified, terminated o otherwise changed except in writing and signed by Lessee and Lessor. To the extent permitted by law, Lessor may charge Lessee a documentation an administration fee of $100.00, if for any reason this Lease does no commence. The descriptive headings hereof do not constitute a part of the Lease and no inferences shall be drawn therefrom. Whenever the context of the Lease requires, the masculine gender includes the feminine or neuter, and the singular number includes the plural, and whenever the word Lessor is used herein, it shall include all assignees of Lessor. If there is more than one Lessee named in the Lease, the liability of each shall be joint and several. This Lease is subject to the Illinois Credit Agreements Act.

**22. NOTICES** - All of Lessee's notices to Lessor must be sent by certified mail or recognized overnight delivery service, postage prepaid, to Lessor's address stated in this Lease. Lessor's notices to Lessee may be sent first class mail, postage prepaid, to Lessee's address stated in this Lease.

**23. MISCELLANEOUS** - Lessee and Lessor intend and agree that a photocopy or facsimile of this Lease and all related documents, including but not limited to the Acceptance Certificate, with their signatures thereon shall be treated as originals, and shall be deemed to be as binding, valid, genuine and authentic as an original signature document for all purposes. This Lease is a "Finance Lease" as defined in Article 2A of the UCC.

**24. JURISDICTION** - This Lease shall be governed by the laws of the State of Illinois without regard to conflict of law principles. Any litigation arising out of or in relation to this Lease or any transaction contemplated hereby may be instituted in any federal or state court in Illinois, and Lessee waives any objection that it may now or hereafter have to venue in any such court and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any such litigation.

**25. LESSEE REPRESENTATIONS** - Lessee represents and warrants that (i) it has complete and unrestricted power to enter into this Lease, (ii) the persons executing this Lease have been duly authorized to execute this Lease on Lessee's behalf, (iii) all information supplied to Lessor is true and correct, including all credit and financial information (iv) it is able to meet all its financial obligations, including the rent payments hereunder, and (v) it disclaims any reliance on any representation by Lessor in entering into this Lease.

THE LOGO APPEARING ON THIS DOCUMENT IS A FEDERALLY REGISTERED TRADEMARK AND MAY NOT BE USED IN ANY WAY NOR MAY THIS DOCUMENT BE ALTERED OR MANIPULATED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF AT&T CAPITAL SERVICES, INC. LESSEE MAY TRANSFER THIS DOCUMENT FROM ELECTRONIC FORMAT TO A TANGIBLE ONE BY PRINTING IT IN ITS UNALTERED STATE.

001-3814200-002 Lessee initials____

mm. Rev. 5-1-06

Page 3 of 3



**AT&T Capital Services, Inc.**
2000 W. AT&T Center Drive
Hoffman Estates, IL 60192-5000
Office: 800/346-8082
Fax: 847/427-5058

# Insurance Request
*CompleteLease℠ Agreement*
**Number:** 001-3814200-002
**Dated:** February 1, 2007

## Lessee

| Customer full legal name | | Trade name, if applicable | |
|---|---|---|---|
| WTL FINANCIAL, INC. | | | |
| Telephone number | Fax number | State of Formation | Federal Employer Identification Number |
| (800) 306-9849 | | CA | |
| Contact Name | | E-Mail Address | |
| CHRISTOPHER WARREN | | christopher@wtlfinancial.net | |

| Headquarter Address | City | State | Zip | County |
|---|---|---|---|---|
| 3127 FITE CIRCLE STE E | SACRAMENTO | CA | 95827 | |
| Equipment location | City | State | Zip | County |
| 9300 TECH CENTER DRIVE SUITE 160 | SACRAMENTO | CA | 95826 | |

## Equipment Detail

**Equipment Description**
Nortel CS 1000M PBX System, Trndi Package, CP4.0 201i System, M3902 & M3904 Tel Sets, all with attachments, accessories and related peripherals, Install, Project Management, Training, Warranty, Freight and buyout of existing lease contract 3814200-001

**Equipment Supplier**
SBC Business Comm Srvcs

## Insurance

| Insurance Company/Agency | | Agent/Broker Name | | | |
|---|---|---|---|---|---|
| / | | X | | | |
| Address | City | | State | Zip | Telephone Number |
| X | Y | | V | Y | X |
| Carrier (If different from above) | Policy Number | | | Expiration Date | |
| Y | X | | | X | |

Please notify your insurance company to forward a copy of your insurance certificate to our office.

## Policy Limits

Please amend the above policy to include coverage on the above-described Equipment as follows:

    PHYSICAL DAMAGE COVERAGE in the amount of: the full replacement value of the Equipment
    COMPREHENSIVE GENERAL LIABILITY COVERAGE in the amount of: $1,000,000 (combined single limit)

Please issue to Lessor at its address shown above, an endorsement to the above policy (1) naming Lessor as additional insured and loss payee, as its interest may appear on the Equipment, and (2) agreeing to give Lessor thirty (30) days prior written notice of the effective date of any alteration or cancellation of such policy.

## Acknowledgment

We appreciate your cooperation in attending to this matter as quickly as possible.

| Lessee Name |
|---|
| WTL FINANCIAL, INC. |
| Name and title (please print) |
| / |
| Signature |
| / |

Form Rev. 5 1/07



AT&T Capital Services, Inc.

2000 W. AT&T Center Drive
Hoffman Estates, IL 60192-5000
Office: 800/346-8082
Fax: 847/427-5058

# ACCEPTANCE CERTIFICATE

To Lessor: The undersigned Lessee hereby certifies that all Equipment described in CompleteLease(SM) Agreement No. 001-3814200-002 has been delivered to Lessee and installed; that the Equipment has been inspected by Lessee and is in good operating order; and that the Equipment is accepted by Lessee for all purposes under the Lease. Lessee hereby directs Lessor to pay the vendor for the Equipment.

| Lessee Name |  |
|---|---|
| WTL FINANCIAL, INC. |  |
| Description of equipment |  |
| Nortel CS 1000M PBX System, Tmdi Package, CP4.0 201i System, M3902 & M3904 Tel Sets, all with attachments, accessories and related peripherals, Install, Project Management, Training, Warranty, Freight and buyout of existing lease contract 3814200-001 |  |
| Name and title (please print) | Date |
| X | X |
| Signature | Lease # (Office use only) |
| X |  |

Upon acceptance, please fax this certificate to the fax number above and mail to:

Claudia Rodriguez
AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Location No. 4C31F
Hoffman Estates, IL 60192-5000

Form Rev 5-1-06

## CORPORATE GUARANTY OF PAYMENT

In consideration of the extension from time to time of credit and/or other financing accommodations by AT&T Capital Services, Inc. ("AT&T") to:

WTL FINANCIAL, INC.
Print Full Legal Name of Debtor

3127 FITE CIRCLE STE E, SACRAMENTO, CA 95827
Address

The undersigned hereby (jointly and severally, if more than one) absolutely, irrevocably and unconditionally guarantee(s) the full, prompt and faithful payment as due of any and all indebtedness of Debtor to AT&T, including any indebtedness which AT&T may now or hereafter purchase or otherwise acquire ("Indebtedness").

The undersigned hereby (jointly and severally, if more than one) absolutely, irrevocably and unconditionally further guarantee(s) the full, prompt and faithful performance by the Debtor of any and all terms, conditions and covenants required to be performed by the Debtor under any instrument or obligation evidencing or securing Debtor's Indebtedness to AT&T

IT IS AGREED THAT:

(a) This is a continuing Guaranty.

(b) This Guaranty shall be binding upon the undersigned, its successors and assigns.

(c) The undersigned expressly waive(s) presentment, demand, protest or notice of any kind and hereby consent(s) to any extension of time of payment, performance, renewal or modification of any instrument or obligation of indebtedness guaranteed.

(d) This Guaranty includes, without limitation (1) the full, prompt and faithful payment of the amount of any damage or deficiency suffered or incurred by AT&T by any reason of any default by Debtor in connection with any Indebtedness, and (2) the full, prompt and faithful payment of all attorney's fees, costs and expenses incurred by AT&T in the enforcement of this Guaranty.

(e) No amendment, refinancing, extension or transfer of any instrument or obligation of Indebtedness guaranteed, or waiver or variation of any of the terms and conditions or change in the time or amount of payment due, or changes in the course of dealing between Debtor and Guarantor, shall affect the liability of the undersigned under this Guaranty.

(f) All rights of AT&T shall inure to the benefit of its successors and assigns.

(g) This Guaranty shall be governed by the laws of the State of Illinois without giving effect to conflict of law provisions. Any litigation arising out of or relating to this Guaranty may be instituted in any federal or state court in Illinois and Guarantor waives any objection that it may now or hereafter have to venue in any such court, including forum no conveniens, and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any litigation.

(h) Any provision of this Guaranty prohibited by law in any state shall, as to such state, be ineffective to the extent of such prohibition without invalidating any remaining provision of this Guaranty.

IN WITNESS WHEREOF, the undersigned represents that he (she) is authorized to execute this Guaranty, that has been executed on behalf of Guarantor and that it is effective as of the date signed.

Attest:

_____
Secretary

TRINITY CREDIT COMPANY, INC.
Print Guarantor Corporation's Name

1676 BAYER COURT, FOLSOM, CA 95630
Guarantor's Address

By:_____
Officer's Signature                     Date

_____
Print Officer's Name                    Title

CORPORATE GUARANTY 5-1-2006

AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Hoffman Estates, IL 60192-5000

Sir/Madam:

In order to induce AT&T Capital Services, Inc. to enter into contracts with or extend credit or financing to WTL FINANCIAL, INC. (herein called DEBTOR), and in consideration of entering into such contracts, extensions of credit or financing, the undersigned hereby absolutely guarantees the full and prompt payment of any and every indebtedness, liability or obligation (howsoever arising and of any nature whatever), which may now or at any time and from time to time hereafter exist or be incurred by DEBTOR to AT&T Capital Services, Inc., together with all interest thereon and reasonable attorney's fees, costs and expenses of collection incurred by AT&T Capital Services, Inc. in connection therewith. In the event of default at any time by DEBTOR, the undersigned promises to pay such indebtedness, liability or obligation forthwith and without prior demand.

It is understood and agreed that AT&T CAPITAL SERVICES, INC. shall not be obligated by reason of this agreement to enter into contracts with or extend credit or financing to DEBTOR or customers of DEBTOR.

The undersigned hereby consents that AT&T CAPITAL SERVICES, INC. may, without in any manner affecting the undersigned's liability and upon such conditions as AT&T CAPITAL SERVICES, INC. may deem advisable: (1) extend in whole or in part (by renewal or otherwise), modify, premature, change or release any indebtedness, liability, or obligation of DEBTOR or of any other person; (2) sell, release, surrender, modify, impair, exchange, substitute or extend the duration or the time for the performance or payment of, any and all property, of any nature and from whomsoever received, held by AT&T CAPITAL SERVICES, INC. as security for the payment or performance of any indebtedness, liability or obligation of DEBTOR or of any other person to AT&T CAPITAL SERVICES, INC.; (3) settle, adjust, or compromise any of AT&T CAPITAL SERVICES, INC.'s claims against DEBTOR or any other person. The undersigned hereby ratifies and confirms any such extension, renewal, modification, premature, change, release, sale, surrender, impairment, exchange, substitution, settlement, adjustment or compromise, and agrees that the same shall be binding upon the undersigned, and hereby waives any and all defenses, counterclaims or offsets which the undersigned might or could have by reason thereof, it being understood that the undersigned, as guarantor hereunder, shall at all times be and remain liable to AT&T CAPITAL SERVICES, INC..

The undersigned hereby waives: (1) notice of (and acknowledges due notice of) acceptance of this Guaranty by AT&T CAPITAL SERVICES, INC. or the creation, renewal or accrual of any liability of DEBTOR, present or future, or of AT&T CAPITAL SERVICES, INC.'s reliance upon this Guaranty (it being understood that any and every liability and obligation of DEBTOR to AT&T CAPITAL SERVICES, INC. shall conclusively be presumed to have been created, contracted or incurred in reliance upon this Guaranty); (2) demand of payment from any person indebted in any manner on or for any of the liabilities or obligations hereby guaranteed; (3) presentment for payment of any instrument of DEBTOR or any other person, protest thereof, and notice of its dishonor to any party thereto and to the undersigned; and (4) any right of contribution from guarantors other than the undersigned.

This Guaranty may be terminated (but only insofar as it relates to obligations of DEBTOR thereafter incurred) only upon written notice to that effect delivered by the undersigned to AT&T CAPITAL SERVICES, INC. and duly receipted for by AT&T CAPITAL SERVICES, INC.; and upon any such termination, the undersigned shall nevertheless remain liable with respect to all indebtedness, liabilities or obligations created or arising theretofore to the full extent of the undersigned's liability therefor as above set forth.

This Guaranty shall, without further consent of or notice to the undersigned, pass to, and may be relied upon and enforced by any of AT&T CAPITAL SERVICES, INC.'s affiliated, associated, or subsidiary companies or any successor or assignee of you and any transferee or subsequent holder of any of said indebtedness, liabilities or obligations.

This Guaranty shall be governed by the laws of the State of Illinois without giving effect to conflict of law provisions. The undersigned waives trial by jury and consents and submits to personal jurisdiction in the State and/or federal courts of Illinois and consents to venue in any county in which AT&T CAPITAL SERVICES, INC. maintains an office. This Guaranty shall bind the heirs, representatives, successors and assigns of the undersigned

IN WITNESS WHEREOF, the undersigned have hereunto set their hands and seals
this X_____ day of _____, 20____.
(Signatures must be as individuals – not as company officials)

X_____
Witness

X_____
NITESH PATEL (Individual Signature)

X_____
Home Address

X_____
Witness

X_____
NICHOLAS M. LUCIA (Individual Signature)

_____
Home Address

PERSONAL GUARANTY
10-16-00

_____
Witness


_____
Witness

_____
NATALIE T. LUCIA (Individual Signature)

_____
Home Address

_____
(Individual Signature)

_____
Home Address

PERSONAL GUARANTY
10-16-00