# Exhibit

# A

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| Andrew M. Spangler Jr., Esq<br>Chico & Nunes, P.C.<br>333 West Wacker Drive, Suite 1800<br>Chicago, IL 60606<br>Telephone No: 312-463-1000    FAX No: 312-463-1001 | | |

Attorney for: Plaintiff

Ref. No. or File No.:

Insert name of Court, and Judicial District and Branch Court:

United States District Court - Northern District Of Illinois

Plaintiff: AT&T Capital Services, Inc., et al.

Defendant: WTL Financial , Inc., et al.

| **AFFIDAVIT OF SERVICE** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>07C6428 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the Summons In A Civil Case; Verified Complaint; Civil Cover Sheet; Corporate Disclosure Statement; Attorney Appearance Form

3. a. Party served:          WTL Financial , Inc., A California Corporation
   b. Person served:         Christopher Warren, Agent for Service

4. Address where the party was served:        1113 Sandwick Way
                                              Folsom, CA 95630

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Sat., Dec. 01, 2007 (2) at: 11:22AM

**7. Person Who Served Papers:**
   a. Mike Singh

Fee for Service:        $74.00

I Declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.



1ˢᵗ Nationwide Legal Services
501 12th Street
Sacramento CA, 95814

**Voice:** 916.449.8990
**FAX:** 916.449.8991

12|4|07
(Date)

_____
(Signature)



SAVANNAH R. PAYNE
Commission # 1669123
Notary Public - California
Sacramento County
My Comm. Expires May 22, 2010

8. **SUBSCRIBED AND SWORN to me, a Notary Public in and for said County and State.**

My Commission Expires  5|22|2010
                          (Date)

**AFFIDAVIT OF SERVICE**

_____
(Notary Public))

ahspa.81329

# Exhibit

# B

| Attorney or Party without Attorney:<br>Andrew M. Spangler Jr., Esq<br>Chico & Nunes, P.C.<br>333 West Wacker Drive, Suite 1800<br>Chicago, IL 60606<br>Telephone No: 312-463-1000     FAX No: 312-463-1001 | | For Court Use Only |
|---|---|---|
| Attorney for: Plaintiff | Ref. No. or File No.: | |
| Insert name of Court, and Judicial District and Branch Court:<br>United States District Court - Northern District Of Illinois | | |
| Plaintiff: AT&T Capital Services, Inc., et al.<br>Defendant: WTL Financial , Inc., et al. | | |

| **AFFIDAVIT OF SERVICE** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>07C6428 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons In A Civil Case; Verified Complaint; Civil Cover Sheet; Corporate Disclosure Statement; Attorney Appearance Form

*3. a. Party served:*                                 Christopher Warren, An Individual
   *b. Person served:*                        Christopher Warren, Personally

*4. Address where the party was served:*        1113 Sandwick Way
                                              Folsom, CA 95630

*5. I served the party:*
   **a. by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Sat., Dec. 01, 2007 (2) at: 11:22AM

*7. Person Who Served Papers:*                   *Fee for Service:*     $123.00
   a. Mike Singh                             I Declare under penalty of perjury under the laws of the State of
                                     Illinois that the foregoing is true and correct.



1st Nationwide Legal Services
501 12th Street
Sacramento CA, 95814

**Voice:** 916.449.8990
**FAX:** 916.449.8991

12/4/07
*(Date)*                                       *(Signature)*

SAVANNAH R. PAYNE
Commission # 1669123
Notary Public - California
Sacramento County
My Comm. Expires May 22, 2010

*8. SUBSCRIBED AND SWORN to me, a Notary Public in and for said County and State.*

My Commission Expires 5|22|2010
                   *(Date)*

AFFIDAVIT OF SERVICE                            Savannah Payne
                                               *(Notary Public))*
                                               *anspa.81327*

# Exhibit C

**U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
Eastern Division**

| | | |
|---|---|---|
| AT&T CAPITAL SERVICES, INC., | : | |
| a Delaware corporation, and | : | |
| SBC GLOBAL SERVICES, INC., | : | |
| a Delaware corporation | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | **Case No. 1:07-cv-06428** |
| WTL FINANCIAL, INC., | : | **Honorable Mark Pilip** |
| a California corporation, | : | |
| CHRISTOPHER WARREN, | : | |
| an individual, | : | |
| Defendants. | : | |

**AFFIDAVIT OF CLAUDIA RODRIGUEZ IN SUPPORT OF MOTION FOR DEFAULT
JUDGMENT**

| STATE OF ILLINOIS | ) | |
|---|---|---|
| | ) | ss. |
| COUNTY OF COOK | ) | |

I, Claudia Rodriguez, being first duly sworn, do hereby depose and state as follows:

1.  That my name is Claudia Rodriguez; that my business address is 2000 West AT&T Center Drive, Room Z1, Hoffman Estates, IL 60192.

2.  I am the Sales Support Manager of AT&T Capital Services, Inc., fka SBC Capital Services fka Ameritech Capital Services, the leasing arm of SBC GLOBAL SERVICES, INC., a Delaware, USA corporation.

3.  Plaintiff SBC Global Services, Inc. is a Delaware corporation, which has registered "AT&T Global Services" as a DBA. SBC Global Services, Inc.'s principal place of business is 225 W. Randolph Street, Chicago, IL 60606.

4.  Upon information and belief, Defendant WTL FINANCIAL, INC. ("WTL") is a corporation existing and operating under the laws of California, with its principal place of business in the

State of California, County of Sacramento, to which location Plaintiffs rendered financing and leasing services of telecommunications equipment that are the subject of this Complaint.

5.  WTL is not a natural person, therefore it is not a minor, an incompetent person, an officer of the State of Colorado or in the military of the United States or any of its allies.

6.  Upon information and belief, Defendant CHRISTOPHER WARREN ("Warren") is an individual residing in the State of California, County of Placer, City of Folsom.

7.  Upon information and belief, Warren is not a minor, an incompetent person, an officer of the State of Colorado or in the military of the United States or any of its allies and is engaged in a civilian occupation.

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between parties that are citizens of different states.

9.  Personal jurisdiction and venue is proper pursuant to Section 24 of the CompleteLease Agreement 001-3814200-001 signed by Defendants which is attached as Exhibit "A" to the Affidavit ("CompleteLease Agreement 001-3814200-001").

**CompleteLease Agreement 001-3814200-001**

10. Beginning in 2005, WTL began ordering telecommunication equipment and leasing services from Plaintiffs.

11. CompleteLease Agreement 001-3814200-001 was signed May 10, 2005 to provide the leasing payments to be made for the equipment and services.

12. WTL made payments for several years, but made its last payment under CompleteLease Agreement 001-3814200-001 on March 22, 2007.

13. As of April 1, 2007, there remained due the sum of $20,791.54 under CompleteLease Agreement 001-3814200-001.

14. Pursuant to paragraph 19 of CompleteLease Agreement 001-3814200-001, interest accrues on the amounts due at the rate of 18% per annum.

15. Interest has accrued from April 1, 2007 to January 15, 2008 in the amount of $2,972.50.

16. Interest continues to accrue at the rate of $10.25 per diem.

17. Pursuant to paragraph 19 of CompleteLease Agreement 001-3814200-001, Plaintiffs are entitled to its costs and attorney's fees in connection with collecting amounts due.

18. Plaintiffs have incurred costs of $2,798.78 in connection with collecting amounts due.

19. Plaintiffs have incurred attorney's fees in the amount of $14,225.50 in connection with collecting amounts due.

20. Plaintiffs have demanded payment of the amounts due, but have not received payment.

21. WTL's refusal and failure to pay, as set forth above, constitutes a breach of contract.

**CompleteLease Agreement 001-3814200-002**

22. On January 26, 2007, WTL signed a Letter Proposal dated January 26, 2007 attached as Exhibit "B" to the Affidavit to add a Nortel CS 1000M PBX system.

23. WTL then signed an Addendum to the Master Agreement to cover the new equipment which is attached as Exhibit "C."

24. Finally, CompleteLease Agreement No. 001-3814200-002 attached as Exhibit "D" to the Affidavit ("CompleteLease Agreement No. 001-3814200-002") was provided to WTL to provide the leasing mechanism for the new equipment.

25. CompleteLease Agreement No. 001-3814200-002 was never signed by WTL, however, the subject equipment was delivered to WTL on or about April 1, 2007.

26. The total value of the new equipment delivered to WTL was $217,747.66.

27. WTL did not make any payments under CompleteLease Agreement No. 001-3814200-002.

28. Under paragraph 19 of CompleteLease Agreement No. 001-3814200-002, Plaintiffs can require that WTL pay the residual value of the equipment of $217,747.66.

29. Pursuant to paragraph 19 of CompleteLease Agreement 001-3814200-002, interest accrues on the amounts due at the rate of 18% per annum.

30. Interest has accrued from April 1, 2007 to January 15, 2008 in the amount of $31,140.90.

31. Interest continues to accrue at the rate of $107.38 per diem.

32. Pursuant to paragraph 19 of CompleteLease Agreement 001-3814200-002, Plaintiffs are entitled to its costs and attorney's fees in collecting this matter.

33. Plaintiffs have incurred costs of $2,798.78 and attorney's fees in the amount of $14,225.50.

34. Plaintiffs have demanded payment of the amounts due, but have not received payment.

35. WTL's refusal and failure to pay, as set forth above, constitutes a breach of contract.

**<u>Personal Guaranty</u>**

36. Warren is a signatory to, and issuer of, an Unconditional Continuing Personal Guaranty (the "Personal Guaranty") under CompleteLease Agreement 001-3814200-001.

37. Warren is liable for the amounts due under CompleteLease Agreement 001-3814200-001 as set forth above.

38. Plaintiffs demanded payment under the Personal Guarantee, but have received no payment.

39. Warren's refusal and failure to pay, as set forth above, constitutes a breach of the Personal Guaranty.

40. Plaintiff AT&T Capital Services, Inc. is entitled to all amounts owed under the Personal Guaranty, plus interest, costs, and attorneys' fees.

**Replevin**

41. Upon information and belief, Defendants are in possession of the following

telecommunications equipment (the "Equipment") which was covered by the subject leases:

| Quantity | Description |
|----------|-------------|
| 3 | Battery Backups 2 hour NTAK75AC |
| 1 | CS 1000M Cab Pkg (AC) NTDU35AB |
| 2 | Tmdi Pkg (1.5MB Dti/Pri)NTSF6800 |
| 29 | M3902 Basic Charcoal phones NTMN32GA70 |
| 3 | M3904 Professional Charcoal phones NTMN34GA70 |
| 10 | KENTROX T1 CSU, RACKMOUNT CARD #77115 |
| 1 | KENTROX 12 SLOT RACK MONT SHELF #77020 |
| 180 | Plug Prong Amplifier P10 AA0043194 |
| 180 | H261N-SupraPlus Bi/NC head sets # AA0132670 |
| 1 | Modular ICS (MICS) |
| 1 | Modular ICS 6.1 Software |
| 4 | T7208 Telephone Set W/MWI – Charcoal |
| 35 | T7316e Telephone Set W/MWI – Charcoal |
| 3 | T24 Key Indicator Module – Charcoal |
| 1 | Fiber 2 Port Expansion Cartridge (MICS) |
| 1 | Fiber Trunk Module (MICS) |
| 1 | Fiber Station Module (MICS) |
| 1 | Service Cartridge (MICS) |
| 1 | Digital Trunk Interface (MICS) |
| 3 | Global Analog Trunk Cartridge – CLID |
| 1 | CallPilot 150 Voice Mail System |
| 1 | RSI Remote Installation |
| 1 | Voice Messaging Mailboxes – 4 |
| 3 | Voice Messaging Mailboxes – 1 |
| 1 | Revolution Call Accounting (v3.0) |
| 1 | Revolution Call Accounting 1st yr maint |
| 1 | Station Message Detail Recording 6 |
| 1 | Power Bar |
| 25 | Norstar PLUS MICS Telephone Feature Card |
| 36 | Plantronics Polaris Headset |
| 1 | UPS Back-up System\TE-600 |
| 1 | 6FT. RS232 Cable with 9 Pin Connector |
| 1 | Test Central Office T1/PRI lines |
| 10 | Test Central Office and/or Centrex Lines |
| 39 | Tone, Tag and Test Customer's Present Cable |
| 1 | UPS Wall Mount Bracket |

42. As further described herein, the subject leases are in default and Plaintiffs are entitled to have possession of the Equipment.

43. Plaintiffs are entitled to have possession of the Equipment. Plaintiffs have attempted to locate and take possession of the Equipment, but to date have been unable to retake possession of it.

**Declaratory Judgment**

44. Plaintiff are entitled to a declaratory judgment that (i) Defendants be required to return the Equipment within thirty (30) days of the such judgment; and (ii) Defendants are in breach of the Leases as a result of its failure to return the Equipment as stated in the Leases;

**Mandatory Injunction**

45. Paragraph 19 of CompleteLease Agreements No. 001-3814200-001 and 001-3814200-002 allow for Plaintiff AT&T Capital Services, Inc. to require the Lessee to return the Equipment to AT&T.

46. Despite demand, the Defendants have failed and refused to return Plaintiffs' Equipment pursuant to the terms of the Leases.

47. Plaintiffs are entitled to a mandatory injunction pursuant to Rule 65, F.R.C.P., compelling the Defendants to return the Equipment in accordance with the Leases.

**Conversion**

48. Upon information and belief, the retail value of the Equipment is $3,700.00.

49. Upon information and belief, the Equipment has not been taken for a tax assessment or fine pursuant to statute, or seized under an execution, nor is it subject to any lien, assessment, or attachment, nor is the Equipment exempt from seizure pursuant to any statute.

50. Plaintiffs have a right to the Equipment held by Defendants pursuant to the Leases.

51. Defendants' refusal and failure to return the Equipment, has resulted in Defendants' unauthorized possession and control over the Equipment belonging to Plaintiffs.

52. Defendants continued possession and control over the Equipment is unauthorized and constitutes a conversion of personal property belonging to Plaintiffs.

53. As a direct result of the Defendants' unauthorized conversion, Plaintiffs have been damaged in the amount of at least $3,700.00 plus interest as provided by law and contract.

**Specific Performance**

54. Defendants are in default under the Leases for failing and refusing to return the Equipment to Plaintiffs in accordance with the Leases.

55. Under the terms of the Leases, in the event of a default by the Lessee, Plaintiffs as Lessor are entitled to have the "Lessee return the Equipment to Lessor" and Plaintiffs, therefore, have the right to specific performance.

56. Plaintiffs are entitled to a judgment of specific performance requiring that Defendants convey the Equipment to Plaintiff.

57. All conditions precedent to this claim have been satisfied.

58. Further Affiant says not.

I, Claudia Rodriguez, affiant herein, being first duly sworn, state that I have read the foregoing Affidavit and find it true and correct to the best of my knowledge and belief.

Dated the 17 day of ___January___, 2008.

Claudia Rodriguez, _____

Subscribed and sworn to before me this 17 day of ___Jan___., 2008 by
_____.

[Seal]         My Commission Expires: 5-14-08.

Notary Public

OFFICIAL SEAL
KIMBERLY R LEVENBURG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/14/08

# Exhibit

# A

05/10/2005  11:09  8663665689      SERVICING        PAGE  02/07



**Ameritech Credit Corporation**
DBA: SBC Capital Services
2000 W. SBC Center Drive
Hoffman Estates, IL 60195
Office: 800/348-8082
Fax: 847/427-4963

# CompleteLease ℠
# Agreement
Number: 001-3814200-001
Dated: 5-10-05

## Lessee

| Customer full legal name | | Trade name, if applicable |
| WTL FINANCIAL, INC. | | |

| Telephone number | Fax number | State of Formation | Federal Employer Identification Number |
| 800-306-9849 | 800-588-0148 | | |

| Contact Name | E-Mail Address |
| CHRISTOPHER WARREN | CHRISTOPHER@WTLFINANCIAL.NET |

| Headquarter Address | City | State | Zip | County |
| 9300 TECH CENTER DRIVE, #160 | SACRAMENTO | CA | 95826 | |

| Equipment location, if different from above | City | State | Zip | County |
| | | | | |

## Equipment Detail

Equipment Description (include make, model, serial no., as more specifically described on any equipment purchase agreements or purchase orders)
MICS, 6.1 SOFTWARE, T7208 AND T7316E PHONES, DTI, CALLPILOT 150 VOICE MAIL SYSTEM, ALL WITH RELATED PERIPHERALS, SHIPPING AND INSTALLATION; STRUCTURED CABLING SYSTEM, LABOR AND MATERIAL.
Equipment Supplier SBC BUSINESS COMMUNICATIONS SERVICES AND SBC DATACOMM, INC.

## Schedule of Rental Payments

Purchase option (Check one):
☒ Fair Market Value (FMV)*    ☐ One Dollar    ☐ Other:

| Down Payment (if applicable)* | Term of Lease (in months) | Total number of payments: 36 | ☐ In Advance* ☒ In Arrears |
| $4654.27 (plus applicable taxes) | 35 | | |

*Payable to SBC Capital Services and due upon execution of this Agreement.

Payment frequency:
☒ Monthly   ☐ Quarterly
☐ Other (please describe)

Payments**:   First 36 at $1228.98 (including applicable taxes)
Remaining   at $_____ (plus applicable taxes)
**Payments may be indexed up until lease commencement.

## Acknowledgement

Lessee hereby certifies that he/she has read and agrees to all of the terms and conditions set forth on pages 1-3 of this CompleteLease ℠ Agreement.

Lessee Name
WTL FINANCIAL, INC.

Name and Title (please print)
X Christopher Warren President

Signature
X _(signature)_

## Accepted By

THIS LEASE IS NOT BINDING UNTIL ACCEPTED BY LESSOR.

Lessor Name
AMERITECH CREDIT CORPORATION
DBA: SBC CAPITAL SERVICES

Name and Title (please print)
Kris Larsen   Mgr MEP

Signature
_(signature)_

## Unconditional Continuing Personal Guaranty

The undersigned (if more than one, then jointly and severally) unconditionally and irrevocably guarantees to Lessor and its successors and assigns, the prompt payment of all sums due under this Lease and further guarantees the performance by Lessee of all the terms and conditions thereunder, regardless of any invalidity or unenforceability thereof. The undersigned agrees to pay all costs and expenses, including but not limited to attorney's fees, incurred by Lessor in enforcing the Lease and the Guaranty. The undersigned waives notice of acceptance, presentment, demand, protest, notice of default and acknowledges that Lessor may proceed directly against the undersigned without first proceeding against Lessee. The undersigned waives trial by jury and consents and submits to personal jurisdiction in the state and/or federal courts of Illinois and consents to venue in any county in which Lessor maintains an office. This guaranty shall bind the heirs, representatives, successors and assigns of the undersigned.

| Guarantor #1 name and home address (please print) | Guarantor #2 name and home address (please print) |
| CHRISTOPHER WARREN | |

| Signature (individually; no titles) | Date | Signature (individually; no titles) | Date |
| X _(signature)_ | X 5/10/05 | | |

```
EXHIBIT
A
```

T-929   P.03/08   F-331      0800-062-748      FROM-AMERITECH CAPITAL      MAY-10-05   12:36

05/10/2005  11:09  8663665689                    SERVICING                    PAGE  03/07

## Terms and Conditions

**1. LEASE** - Subject to the terms and conditions of this CompleteLease Agreement (the "Lease"), Lessee agrees to lease from Lessor, the equipment (including all replacements, repairs, attachments and additions incorporated therein or affixed hereto, collectively the "Equipment") described on page 1 of this Lease. The Lease shall commence on the date the Equipment is accepted by the Lessee if it falls on the first day of a month ("Commencement Date") and shall continue for the number of months specified in the Lease ("Initial Term"). If the Commencement Date is other than the first day of the month, the Lease shall make an initial prorated rental payment from the Commencement Date (including such date) through the last day of such month and the Initial Term shall commence on the first day of the following month.

**2. RENT** - During the Initial Term and any renewal term of the Lease, Lessee agrees to pay Lessor total rent equal to the aggregate number of rental payments multiplied by the amount of each payment (plus taxes) specified on page 1 of the Lease. The due date of the first rent payment is the date upon which the Equipment is delivered to Lessee or any later date designated by Lessor. Restrictive endorsements on checks sent to Lessor will not reduce Lessee's obligations to Lessor.

**3. NON-CANCELABLE LEASE** - Lessee's obligation to make Lease payments and to pay any other amounts due hereunder shall be ABSOLUTE AND UNCONDITIONAL, and shall not be subject to any delay, cancellation, termination, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever. This is an irrevocable Lease for the full term and cannot be cancelled.

**4. DELIVERY, INSTALLATION AND ACCEPTANCE** - Lessee understands that Lessor is not responsible for delivery or installation. Lessee holds Lessor harmless from specific performance of this Lease and from any damages if for any reason the manufacturer, supplier, vendor or distributor (collectively referred to as "Vendor") delays in delivery, or if the Equipment is unsatisfactory. After delivery of the Equipment to Lessee or after installation, if installation is included, Lessee shall have no more than ten (10) days to test the Equipment and deliver a signed certificate of acceptance or written notification of material defect(s) to Lessor. If Lessee fails to deliver a signed certificate of acceptance or written notice of material defect(s) to Lessor within this timeframe, the Equipment shall be deemed accepted by the Lessee as of the tenth day.

**5. WARRANTY DISCLAIMER** - LESSEE AGREES THAT IT HAS SELECTED THE VENDOR AND EACH ITEM OF EQUIPMENT BASED UPON ITS OWN JUDGEMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSOR MAKES NO WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND LESSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE EQUIPMENT. WARRANTIES MADE BY THE VENDOR TO THE LESSOR SHALL INURE TO THE BENEFIT OF THE LESSEE, TO THE EXTENT ASSIGNABLE. IF THE EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED, WARRANTED OR GUARANTEED BY VENDOR, OR IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE ITS CLAIM AND ANY COMPLAINT THEREFOR AGAINST VENDOR, AND NOT AGAINST LESSOR AND SHALL CONTINUE TO MAKE ALL RENTAL AND OTHER PAYMENTS REQUIRED HEREUNDER. LESSOR DISCLAIMS ANY WARRANTY THAT THE EQUIPMENT IS DELIVERED FREE OF THE RIGHTFUL CLAIM OF ANY PERSON BY WAY OF INFRINGEMENT OR SIMILAR CLAIM. LESSEE ACKNOWLEDGES THAT VENDOR IS NOT AN AGENT OF LESSOR AND STATEMENTS OR REPRESENTATIONS OF THE VENDOR SHALL NOT BIND OR AFFECT LESSOR, AND SHALL NOT AFFECT THE LESSEE'S OBLIGATIONS UNDER THIS LEASE. LESSOR ASSUMES NO RESPONSIBILITY FOR THE INSTALLATION, ADJUSTING OR SERVICING OF THE EQUIPMENT.

**6. NO AGENCY** - Lessee acknowledges that (1) there is no agency or joint venture between Lessor and the Vendor; (2) neither the Vendor nor any other person is authorized to act on Lessor's behalf; and (3) ONLY AN INDIVIDUAL AUTHORIZED BY LESSOR IS PERMITTED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE.

**7. ASSIGNMENT** - LESSEE WILL NOT SELL, ASSIGN, SUBLET, PLEDGE OR OTHERWISE ENCUMBER, OR PERMIT A LIEN TO EXIST ON OR AGAINST ANY INTEREST IN THIS LEASE, OR THE EQUIPMENT, OR REMOVE THE EQUIPMENT FROM ITS LOCATION REFERRED TO ON PAGE 1, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT. LESSOR MAY ASSIGN ITS INTEREST IN THIS LEASE AND SELL OR GRANT A SECURITY INTEREST IN ALL OR ANY PART OF THE EQUIPMENT WITHOUT LESSEE'S CONSENT. LESSEE AGREES THAT IN ANY ACTION BROUGHT BY AN ASSIGNEE AGAINST LESSEE TO ENFORCE LESSOR'S RIGHTS HEREUNDER, LESSEE WILL NOT ASSERT AGAINST SUCH ASSIGNEE AND EXPRESSLY WAIVES AS AGAINST ANY ASSIGNEE, ANY DEFENSE OR DEFAULT ON THE PART OF LESSOR HEREUNDER OR ANY OTHER DEFENSE, CLAIM OR SET-OFF WHICH LESSEE MAY HAVE AGAINST LESSOR EITHER HEREUNDER OR OTHERWISE. NO SUCH ASSIGNEE SHALL BE OBLIGATED TO PERFORM ANY OBLIGATION, TERM OR CONDITION REQUIRED TO BE PERFORMED BY LESSOR HEREUNDER.

**8. TITLE** - Lessor is the owner of the Equipment and has title to the Equipment. If any other person attempts to claim ownership of the Equipment by asserting that claim against Lessee or through Lessor, Lessee agrees, at its expense, to protect and defend Lessor's title to the Equipment. Lessee further agrees that it will at all times keep the Equipment free from any legal process, encumbrance or lien whatsoever, and Lessee shall give Lessor immediate notice if any legal process, encumbrance or lien is asserted or made against the Equipment.

**9. SECURITY INTEREST** - To secure payments hereunder, Lessee grants to Lessor a security interest in the Equipment and all additions, attachments, accessions and substitutions thereof.

**10. QUIET ENJOYMENT** - Provided that no Event of Default (as defined in Section 19 herein) has occurred or is continuing hereunder, Lessor shall not interfere with Lessee's right of quiet enjoyment and use of the Equipment.

**11. CARE, USE AND LOCATION** - Lessee is responsible for installing and keeping the Equipment free from damage and in good working order and repair. Lessee will keep and use the Equipment only at the address shown on page 1, and will only use it for business purposes and in compliance with all applicable laws. Lessee will not make any alterations to the Equipment without Lessor's prior written consent, nor will Lessee permanently attach the Equipment to any real estate. At the termination of this Lease, Lessee will return the Equipment to a location designated by Lessor, at Lessee's expense. Lessee shall, at Lessor's request, affix to the Equipment, tags, decals or plates furnished by Lessor indicating Lessor's ownership and Lessee shall not permit their removal or concealment.

**12. RISK OF LOSS** - From the date the Equipment is delivered to Lessee until it is returned to Lessor, Lessee shall bear the entire risk of loss, theft, destruction or damage of the Equipment or any part thereof from any cause whatsoever. No loss, theft, destruction or damage of the Equipment shall relieve Lessee of the obligation to pay rent or any other obligation under this Lease. In the event of loss, theft, destruction or damage of any kind to any item of Equipment, Lessee shall notify Lessor and at the option of Lessor, Lessee shall (a) place the Equipment in good condition and repair, or (b) replace the Equipment with identical equipment of at least equal value in good condition and repair with clear title given to Lessor, or (c) pay Lessor an amount equal to 1) all rent and other amounts then due and owing, and 2) the unpaid balance of rentals for the remaining term of the Lease (discounted to present value at a rate of 3%) plus an amount equal to the estimated Fair Market Value (as defined herein) of the Equipment at the time of the loss.

**13. TAXES AND FEES** - Lessee shall pay when due and shall indemnify Lessor for, and hold Lessor harmless from and against all federal, state, and local filing fees, assessments, taxes including without limitation, sales, lease, use, excise and personal property taxes (excluding only taxes payable with respect to Lessor's net income) which may be imposed on the Lessor arising in any way out of the ownership, use, possession or leasing of the Equipment. Such amounts shall be considered additional rent and shall be payable by Lessee upon demand by Lessor.

Lessee acknowledges that Lessor may be claiming certain tax benefits available to the owner of the Equipment, including depreciation benefits under the

Page 2 of 3

Lessee Initials X_____

05/10/2005  11:09   8663665689                        SERVICING                           PAGE  04/07

Modified Accelerated Cost Recovery System set forth in the Internal Revenue Code of 1986, as amended ("Tax Benefits"). Lessee agrees that it will take no action inconsistent with the foregoing and that it will indemnify Lessor on an after-tax basis for any loss of Tax Benefits due to Lessee's action. Upon Lessor's written notice to Lessee that a loss of Tax Benefits has occurred, Lessee will reimburse Lessor for the amount of the loss. The obligations under this section shall survive the expiration or termination of this Lease.

**14.  INDEMNITY** - Lessee hereby indemnifies Lessor and holds Lessor harmless from any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney's fees, arising out of or connected with the Equipment or the use thereof, including without limiting the generality of the foregoing, its manufacture, selection, delivery, possession, use, leasing, fitness operation, return, or latent or other defects, whether or not discoverable, or arising out of any failure by Lessee to perform or comply with any of the terms and conditions of this Lease. The indemnities contained herein shall continue in full force and effect notwithstanding the termination of this Lease, whether by expiration of time, by operation of law, or otherwise. Lessee is an independent contractor and nothing contained in this Lease shall authorize Lessee or any other person to operate or use any Equipment so as to incur any obligation on behalf of Lessor or impose any liability on Lessor.

**15.  INSURANCE** - Lessee shall obtain and maintain on or with respect to the Equipment at its own expense (a) liability insurance insuring against liability for bodily injury and property damage, and (b) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the original cost of the Equipment. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies to Lessee, naming Lessor as an additional insured and loss payee thereunder. Each such policy shall be in such form and with such insurers as may be satisfactory to Lessor, including clauses requiring the insurer to give to Lessor at least 30 days prior written notice of any alteration or cancellation thereof.

**16.  END OF TERM OPTIONS** - Provided Lessee has fulfilled all of its obligations herein and is not in default hereunder. Upon expiration of a FMV Lease, the Lessee may, upon irrevocable written notice to Lessor given at least ninety (90) but not more than one hundred eighty (180) days prior to the expiration of the Initial Term, purchase all (but not less than all) of the Equipment at its Fair Market Value. Fair Market Value is the price at which a buyer under no compulsion to buy would purchase the Equipment at retail from a seller under no compulsion to sell. In the event the "One Dollar" or "Other" box is indicated, Lessee shall pay the corresponding amount to Lessor to release the security interest referred to in Section 9.

**17.  EXPIRATION; EXTENSION** - SUBJECT TO SECTION 16 HEREOF, UNLESS LESSEE NOTIFIES LESSOR IN WRITING NINETY (90) DAYS PRIOR TO THE EXPIRATION OF THIS LEASE OF ITS INTENTION TO TERMINATE THIS LEASE AT ITS EXPIRATION DATE (ONLY IF THE "FMV" BOX IS INDICATED), THEN THIS LEASE SHALL BE EXTENDED UPON ALL OF THE TERMS AND CONDITIONS AS STATED HEREIN FOR A PERIOD OF (90) DAYS FROM ITS EXPIRATION DATE WITHOUT THE NECESSITY OF THE EXECUTION OF ANY FURTHER DOCUMENTS AND SHALL CONTINUE FROM MONTH TO MONTH THEREAFTER UNDER THE SAME TERMS AND CONDITIONS UNTIL TERMINATED.

**18.  REDELIVERY OF EQUIPMENT** - Provided ninety (90) days prior written notice has been given to Lessor, upon termination of this Lease, Lessee shall disconnect, properly package for transportation and return all (not part) of the Equipment, freight prepaid, to a location designated by Lessor, in good repair, condition and working order, and be eligible for acceptance by the manufacturer or maintenance organization. If upon expiration or termination, Lessee does not immediately return the Equipment as required herein, Lessee may, at its option, (a) arrange for removal of the Equipment and Lessee agrees to pay Lessor an amount equal to two (2) rent payments, or (b) automatically renew the Lease on the same terms and conditions for successive one-year periods at the same rental as in this Lease, subject to the right of either party to terminate the Lease upon six (6) months written notice (at the expiration of such notice, Lessee will deliver the Equipment to Lessor under the terms of this section).

**19.  DEFAULT AND REMEDIES** - If Lessee (a) does not pay any rent within ten (10) days after the same becomes due, (b) breaches any of its representations, warranties or other obligations under the Lease, (c) is in default under any other agreement between Lessee and Lessor (d) becomes insolvent or assigns its assets for the benefit of its creditors, or (e) enters

(voluntarily or involuntarily) a bankruptcy proceeding ("Event(s) of Default"), Lessee will be in default. Upon the occurrence of an Event of Default, Lessor may require that Lessee return the Equipment to Lessor and pay the remaining balance of all of the rental payments due under this Lease, present valued using a 3% per year discount rate. If Lessee fails to return the Equipment to Lessor, in addition Lessor can also require that Lessee pay the Lessor's residual interest in the Equipment, present valued as noted above. Lessee also represents to Lessor that interest on all sums due Lessee from date of default until paid will be at the rate of one and one-half percent (1-1/2%) per month, but only to the extent permitted by law. In addition, Lessor shall be entitled to recover from Lessee any of the remedies available under the Uniform Commercial Code ("UCC") or any other law. If Lessor refers this Lease to an attorney or collection agency for enforcement or collection, Lessee agrees to pay the cost of repossession, storing, shipping, repairing and selling the Equipment including, but not limited to, legal fees and expenses. Lessee agrees that Lessor is not required to notify Lessee that it is selling the Equipment.

**20.  OTHER RIGHTS** - Lessee agrees that any delay or failure to enforce Lessor's rights under this Lease does not prevent Lessor from enforcing any rights at a later time. Lessee and Lessor intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. If this document is found not to be a Lease, then Lessee grants Lessor a security interest in the Equipment. Lessee hereby appoints Lessor, its agents, successors or assigns its true and lawful attorney-in-fact for the limited purpose of executing and filing on behalf of Lessee any and all UCC Financing Statements which in Lessor's sole discretion are necessary or proper to secure Lessor's interest in the Equipment in all applicable jurisdictions.

**21.  ENTIRE AGREEMENT; CHANGES** - This Lease contains the entire agreement between Lessee and Lessor and supersedes all previous discussions and the terms and conditions of any purchase orders issued or and/or by Lessee and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by Lessee and Lessor. To the extent permitted by law, Lessor may charge Lessee a documentation and administration fee of $50.00. If for any reason this Lease does not commence. The descriptive headings hereof do not constitute a part of the Lease and no inferences shall be drawn therefrom. Whenever the context of the Lease requires, the masculine gender includes the feminine or neuter, and the singular number includes the plural, and whenever the word Lessor is used herein, it shall include all assignees of Lessor. If there is more than one Lessee named in the Lease, the liability of each shall be joint and several.

**22.  NOTICES** - All of Lessee's notices to Lessor must be sent by certified mail or recognized overnight delivery service, postage prepaid, to Lessor's address stated in this Lease, or by facsimile transmission to our facsimile telephone number, with oral confirmation of receipt. Lessor's notices to Lessee may be sent first class mail, postage prepaid, to Lessee's address stated in this Lease.

**23.  MISCELLANEOUS** - Lessee and Lessor intend and agree that a photocopy or facsimile of this Lease and all related documents, including but not limited to the Acceptance Certificate, with their signatures thereon shall be treated as originals, and shall be deemed to be as binding, valid, genuine and authentic as an original signature document for all purposes. This Lease is a "Finance Lease" as defined in Article 2A of the UCC.

**24.  JURISDICTION** - This Lease shall be governed by the laws of the State of Illinois without regard to conflict of law principles. Any litigation arising out of or in relation to this Lease or any transaction contemplated hereby may be instituted in any federal or state court in Illinois, and Lessee waives any objection that it may now or hereafter have to venue in any such court and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any such litigation.

**25.  LESSEE REPRESENTATIONS** - Lessee represents and warrants that (i) it has complete and unrestricted power to enter into this Lease, (ii) the persons executing this Lease have been duly authorized to execute this Lease on Lessee's behalf, (iii) all information supplied to Lessor is true and correct, including all credit and financial information and (iv) it is able to meet all its financial obligations, including the rent payments hereunder.

THE LOGO APPEARING ON THIS DOCUMENT IS A FEDERALLY REGISTERED TRADEMARK AND MAY NOT BE USED IN ANY WAY NOR MAY THIS DOCUMENT BE ALTERED OR MANIPULATED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF AMERITECH CREDIT CORPORATION. LESSEE MAY TRANSFER THIS DOCUMENT FROM ELECTRONIC FORMAT TO A TANGIBLE ONE BY PRINTING IT IN ITS UNALTERED STATE.

F-331     T-628     08/09/00     847-280-0480                        FROM-AMERITECH CAPITAL          12:38  MAY-10-05

05/10/2005  11:09    8663665689                SERVICING                    PAGE  05/07



**Ameritech Credit Corporation**
DBA:  SBC Capital Services
2000 W. SBC Center Drive
Hoffman Estates, IL  60196
Office:  800-349-8052
Fax:    847/427-4969

# Insurance Request
CompleteLease(SM) Agreement
Number: 001-3814200-001
Dated:  5-10-05

### Lessee

| Customer full legal name | | | | | |
|---|---|---|---|---|---|
| WTL FINANCIAL, INC. | | Trade name, if applicable | | | |

| Telephone number | Fax number | State of Formation | Federal Employer Identification Number |
|---|---|---|---|
| 800-300-0849 | 800-888-0145 | | |

| Contact Name | E-Mail Address |
|---|---|
| CHRISTOPHER WARREN | CHRISTOPHER@WTLFINANCIAL.NET |

| Headquarter Address | City | State | Zip | County |
|---|---|---|---|---|
| 9800 TECH CENTER DRIVE, #160 | SACRAMENTO | CA | 95828 | |
| Equipment location, if different from above | City | State | Zip | County |

### Equipment Detail

Equipment Description (include make, model, serial no., as more specifically described on any equipment purchase agreements or purchase orders)
MICS, 6.1 SOFTWARE, T7208 AND T7316E PHONES, DTI, CALLPILOT 150 VOICE MAIL SYSTEM, ALL WITH RELATED PERIPHERALS,
SHIPPING AND INSTALLATION; STRUCTURED CABLING SYSTEM, LABOR AND MATERIAL

Equipment Supplier
SBC BUSINESS COMMUNICATIONS SERVICES AND SBC DATACOMM, INC.

### Insurance

| Insurance Company/Agency | | | Agent/Broker Name | | | |
|---|---|---|---|---|---|---|
| ✕ | | | ✕ | | | |
| Address | City | | State | Zip | | Telephone Number |
| ✕ | ✕ | | ✕ | ✕ | | ✕ |
| Carrier (if different from above) | Policy Number | | | Expiration Date | | |
| ✕ | ✕ | | | ✕ | | |

Please notify your insurance company to forward a copy of your insurance certificate to our office.

### Policy Limits

Please amend the above policy to include coverage on the above-described Equipment as follows:

    PHYSICAL DAMAGE COVERAGE in the amount of: the full replacement value of the Equipment
    COMPREHENSIVE GENERAL LIABILITY COVERAGE in the amount of: $1,000,000 (combined single limit)

Please issue to Lessor at its address shown above, an endorsement to the above policy (1) naming Lessor as additional insured and loss
payee, as its interest may appear on the Equipment, and (2) agreeing to give Lessor thirty (30) days prior written notice of the effective date of
any alteration or cancellation of such policy.

### Acknowledgment

We appreciate your cooperation in attending to this matter as quickly as possible.

| Lessee Name | |
|---|---|
| WTL FINANCIAL, INC. | |
| Name and title (please print) | |
| ✕  *Christopher Warren, President* | |
| Signature | |
| ✕  *[signature]* | |



**Ameritech Credit Corporation
DBA: SBC Capital Services**
2000 W. SBC Center Drive
Hoffman Estates, IL 60196
Office:  800/348-9382
Fax:    847/427-4963

# ACCEPTANCE
# CERTIFICATE

To Lessor: The undersigned Lessee hereby certifies that all Equipment described in CompleteLease(SM) Agreement No. 001-3814208-001 has been delivered to Lessee and installed; that the Equipment has been inspected by Lessee and is in good operating order; and that the Equipment is accepted by Lessee for all purposes under the Lease.  Lessee hereby directs Lessor to pay the vendor for the Equipment.

| Lessee Name |  |
|---|---|
| **WTL FINANCIAL, INC.** | |
| Description of equipment | |
| MICS, 6.1 SOFTWARE, T7208 AND T7316E PHONES, DTI, CALLPILOT 150 VOICE MAIL SYSTEM, ALL WITH RELATED PERIPHERALS, SHIPPING AND INSTALLATION; STRUCTURED CABLING SYSTEM, LABOR AND MATERIAL | |
| Name and title (please print) <br> X _Christopher Warren, President_ | Date <br> X _5/10/05_ |
| Signature <br> X | Lease # (Office use only) |

Upon acceptance, please fax this certificate to the fax number above and mail to:

DEBBIE MEYERING
SBC Capital Services
2000 W. SBC Center Drive
Location No. 4G31G
Hoffman Estates, IL 60196

# Exhibit

# B

JAN-29-2007 08:10 AM    NAPASTYLE                    20999J70192              P.01

 at&t

AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Hoffman Estates, IL 60192

Jodi Ramsey
Phone (847) 290-5017
Fax (847) 427-5553

January 26, 2007

WTL Financial, Inc. (1-26123872)
3127 Fite Circle, Suite E
Sacramento, CA 95827

AT&T Capital Services, Inc. is pleased to provide a proposal for the lease of the equipment and/or services as submitted to us. The proposed lease terms are as follows:

| | |
|---|---|
| Equipment Description: | Nortel CS 1000M PBX system including install, training, warranty, and project management and buyout of Norstar on Sch 3814200-001 |
| Estimated Cost New: | $184,337.00 |
| Buyout Sch 3814200-001: | $21,723.00 (13 months, effective June 1, 2007) |
| Lease Term: | 36 months |
| Lease Rate Factor: | .03183 |
| Lease Payment: | $6,556.89  payable monthly in advance (excludes tax) |
| End of Lease Option: | $1 Purchase Option |

This is a net lease proposal. Any applicable taxes are additional, **Shipping costs are additional for Data Equipment**. The lease rates and monthly cost listed above are indexed to current US Treasury Bills. Any increase or decrease in the corresponding Treasury Bill will cause the lease rate factor to be adjusted point for point and fixed at the time of lease commencement. This proposal is subject to final investment committee approval. The above offer is valid for 30 days.

Lessee hereby grants to Lessor permission to file any and all UCC Financing Statements, which in Lessor's discretion are necessary or proper to secure Lessor's interest in the Equipment and/or Services in all applicable jurisdictions.

The above lease rates do not include any additional interest expense for progress payments, which are required by AT&T on all transactions over $250,000 with installations exceeding 60 days. Progress payments will be financed through AT&T Capital Services at Prime Rate plus 2%.

If the above offer is acceptable to you, please approve below and fax back to me at (847)427-5553. Upon final credit approval, our contract administration department will then prepare and send lease documentation to you. If you have any additional questions, please call me at (847)290-5017.

Thank you for this leasing opportunity. I am looking forward to working with you.

Sincerely,

Jodi Ramsey
Inside Sales

AGREED TO AND ACCEPTED BY:

Requested Term/Lease Type:

Name:

Title: Presiden

Date: 1/26/07

EXHIBIT

tabbies

B

# Exhibit

# C

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

**Addendum Number:**  <enter next sequential addendum #> 16158761

This Addendum ("Addendum"), entered into by SBC Global Services, Inc. Dba AT&T Global Services (on behalf of SBC DataComm dba AT&T DataComm* ("AT&T")) and
WTL Financial

("Customer") and effective as of the date last signed below ("Effective Date"), is an attachment to that certain Master Agreement ("Agreement") dated

[Insert last signature date on Master Agreement]
between the parties thereto. The definitions contained in the Agreement are herein incorporated by reference.

| | |
|---|---|
| **Customer Name:** | WTL Financial |
| **Customer Billing Address:** | 9300 Tech Center Drive |
| **Customer Billing Address:** | |
| (City, State, Zip) | Sacramento, CA  95826 |
| **Customer Billing Number:** | 800-620-7710 |

**Location of Equipment (Delivery/Installation Site Address):**

| | |
|---|---|
| (street) | 9300 Tech Center Drive |
| (city, county, state, zip) | Sacramento, CA  95826 |
| **Date of Submission:** | 12/30/2006 |
| **Lessor:** <Enter 'n/a' if not leasing; 'SBC Capital Services' if leasing> | |
| **Delivery Date:** | |
| **Installation/Cutover Date:** | 2/1/2007 |
| **Purchase Order Number:** | |

PRODUCT PURCHASE PRICE

| | | | |
|---|---|---|---|
| 1. | Total Price of Product | $ | 123,111.14 |
| 2. | Total Charge for Installation/Training/Cutover | $ | 60,380.27 |
| 3. | Total Product Purchase Price | $ | 183,491.41 |

Taxes & Shipping will be listed separately on the invoice.

PRODUCT PAYMENT TERMS

Customer Initials above
payment option chosen

| | Option 1 | Option 2 | Option 3 | Option 4 | | |
|---|---|---|---|---|---|---|
| Down payment: | 50% | 25% | 25% |  | $ | 45,872.85 |
| Delivery: | | | 50% | | $ | 0.00 |
| Cutover: | 50% | 75% | 25% | | $ | 137,618.56 |
| TOTAL: | | | | | $ | 183,491.41 |

¹ Option 1 is the standard billing terms for business sales. Option 2 is used for large businesses and/or other businesses who are purchasing over $16,000 and have been in business at least 2 years with D&B Paydex of > 60. Option 3 is only allowed if the Purchase Price is over $50,000 and the scheduled cutover date is more than 60 days after execution of this Addendum. Option 4 is for requests for non-standard billing and payment terms are subject to the approval of credit verification. All options are subject to Credit Approval.



EXHIBIT
C

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

**Addendum Number:**    <enter next sequential addendum #>

This Addendum ("Addendum"), entered into by SBC Global Services, Inc.  Dba AT&T Global Services (on behalf of SBC DataComm dba AT&T DataComm" ("AT&T")) and
WTL Financial

("Customer") and effective as of the date last signed below ("Effective Date"), is an attachment to that certain Master Agreement ("Agreement") dated

[Insert last signature date on Master Agreement]
between the parties thereto. The definitions contained in the Agreement are herein incorporated by reference.

| | |
|---|---|
| **Customer Name:** | WTL Financial |
| **Customer Billing Address:** | 9300 Tech Center Drive |
| **Customer Billing Address:** | |
| (City, State,  Zip) | Sacramento, CA  95826 |
| **Customer Billing Number:** | 800-620-7710 |

**Location of Equipment (Delivery/Installation Site Address):**

| | |
|---|---|
| (street) | **9300 Tech Center Drive** |
| (city, county, state, zip) | **Sacramento, CA  95826** |

| | |
|---|---|
| **Date of Submission:** | 11/30/2006 |

**Lessor:** <Enter 'n/a' if not leasing; 'SBC Capital Services' if leasing>

| | |
|---|---|
| **Delivery Date:** | |
| **Installation/Cutover Date:** | 2/1/2007 |
| **Purchase Order Number:** | |

PRODUCT PURCHASE PRICE

| | | |
|---|---|---|
| 1.  Total Price of Product | $ | 123,111.14 |
| 2.  Total Charge for Installation/Training/Cutover | $ | 60,380.27 |
| 3.  Total Product Purchase Price | $ | 183,491.41 |

Taxes & Shipping will be listed separately on the invoice.

PRODUCT PAYMENT TERMS        *Please Initial*
Customer Initials above
payment option chosen:                    X ___

| | Option 1 | Option 2 | Option 3 | Option 4 | | |
|---|---|---|---|---|---|---|
| Down payment: | 50% | 25% | 25% | | $ | 45,872.85 |
| Delivery: | | | 50% | | $ | 0.00 |
| Cutover: | 50% | 75% | 25% | | $ | 137,618.56 |
| TOTAL: | | | | | $ | 183,491.41 |

Option 1 is the standard billing terms for business sales.  Option 2 is used for large businesses and/or other businesses who are purchasing over $16,000 and have been in business at least 2 years with D&B Paydex of > 60.  Option 3 is only allowed if the Purchase Price is over $50,000 and the scheduled cutover date is more than 60 days after execution of this Addendum. Option 4 is for requests for non-standard billing and payment terms are subject to the approval of credit verification. All options are subject to Credit Approval.

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

Trinity Credit 011807.tls 1/26/2007

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

## SELECTION OF SBC PremierSERV℠ MAINTENANCE AND SERVICE PLANS:

SBC PremierSERV℠ Voice CPE Support Services Maintenance Plan(For Warranty see Section 5):

☐ Complete            ☐ Essential            ☐ Dedicated            ☐ Custom

☐ ACCEPT - Customer Initials: _____    ☐ DECLINE - Customer Initials: _____

Initial Term: ( ) Years    From: _____    To: _____

Monthly Price: $ _____ 0.00    (plus tax, if applicable)

**Payment Terms (default is annual):**

☐ Prepayment    ☐ Annual    ☐ Semi-Annual    ☐ Quarterly    ☐ Monthly    ☐ Financing

SBC PremierSERV℠ Contact Center Software Support Services:

☐ Complete    ☐ Essential
☐ ACCEPT - Customer Initials: _____    ☐ DECLINE - Customer Initials: _____

Initial Term: ( ) Years    From: _____    To: _____

Monthly Price: $ _____ 0.00    (plus tax, if applicable)

**Payment Terms (default is annual):**

☐ Prepayment    ☐ Annual    ☐ Semi-Annual    ☐ Quarterly    ☐ Monthly    ☐ Financing

**Software Release Subscription (Requires SBC PremierSERV℠ Maintenance Plan and Contact Center Software support Services option as applicable):**

☐ ACCEPT - Customer Initials: _____    ☐ DECLINE - Customer Initials: _____

Initial Term: ( ) (1-3) Years  From: _____    To: _____

Monthly Price: $ _____ 0.00    (plus tax, if applicable)

Payment Terms (default is annual):    ☐ Prepayment    ☐ Annual

**This Addendum may be withdrawn by AT&T if not signed and returned by the Customer within sixty (60) days from the Date of Submission shown above.**

\* "SBC DataComm dba AT&T DataComm" as used herein refers to: SBC DataComm, Inc. dba AT&T DataComm, a Delaware corporation; and to SBC DataComm, a d/b/a name registered to Southwestern Bell Telephone Company in Missouri, Oklahoma, and Texas, and to Pacific Bell Telephone Company in California.

| CUSTOMER | AT&T Global Services on behalf of it's affiliates. |
|---|---|
| ✗ BY: _____ | By: _____ |
| ✗ Printed Name: _____ | Printed Name: _____ |
| ✗ Title: _____ | Title: _____ |
| ✗ Date: 1/26/07 | Date: _____ |

**NOTE:** The Parties' signatures on this Addendum are not necessary when this Addendum is incorporated by reference in the Master Agreement on the Master Agreement's Effective Date. This Addendum must always be associated with a Master Agreement and may not be executed as a standalone agreement.

Attachments:
1 ☐ Statements of Work e.g. SOW, SCOW, PIG
2 ☐ Bill of Materials for Equipment and Services
3 ☐ Invoicing Schedule and Payment Terms
4 ☐ Implementation Timeline
5 ☐ Certificate of Acceptance
6 ☐ Other: _____

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

**1    SCOPE**

This Addendum covers AT&T's sale of voice customer premise equipment ("CPE" or "Equipment") (under the attached Bill of Materials, Order or other applicable document), Installation and/or maintenance Service for such Equipment to be provided by AT&T under the Maintenance Plan identified above (the Maintenance Plan"), and as further described below. The Equipment is further described in the attached Bill of Materials, Order, SOW, Equipment listing or other applicable attachment. This Addendum also covers any Orders issued under this Addendum, as well as any additions or replacement to the Equipment or Service.

**2    SBC SERVICE AND SERVICE EXCLUSIONS**

A.  During the term of the Maintenance Plan, AT&T will repair Equipment that malfunctions due to wear and tear resulting from normal use in accordance with standard operating instructions. Items excluded from coverage under the Maintenance Plan are headsets, portable telephones (cordless/wireless), answering machines, Contact Center servers, UPS systems, power conditioners and power supplies (including batteries and chargers), consumables and any Software which is at a revision level not supported by the Software licensor. AT&T does not remove or recycle batteries.

B.  The Maintenance Plan and any and all warranties provided to Customer in this Addendum or the Master Agreement do not cover malfunctions or defects resulting from abnormal or nonstandard uses or conditions including, but not limited to, the following types of causes: failure to provide a suitable environment for the Equipment, including exposure to improper temperature, humidity, chemicals or airborne agents, Customer abuse, misuse or use contrary to standard operating instructions; improper electrical voltages or currents; power or lightning surges or power interruption; improper storage or placement of the Equipment; damage caused by unauthorized attachments or modification; use with or interconnection of the Equipment to incompatible electrical or mechanical devices; and the installation, maintenance or disassembly, repair or alteration of the Equipment by any person other than AT&T, or an entity expressly approved by AT&T in writing; or Forced Majeure occurrences.

In such excepted cases, Customer will pay AT&T in accordance with AT&T's then prevailing rates in connection with diagnosing such excepted problems and for any resulting repairs. Customer (i) is solely responsible for adequately backing up data and ensuring that its networks/systems are secured against unauthorized intrusion; and (ii) acknowledges that CPE/Software that supports telephony over Transmission Control Protocol/Internet Protocol (TCP/IP) may experience certain compromises in performance, reliability and security even when performing as warranted and that failure to follow manufacturer/licensor recommendations may make such compromises more acute.

C.  AT&T's maintenance Service provided under the Maintenance Plan shall include preventive and remedial maintenance, as required by the CPE manufacturer's specifications or by AT&T. Replacement parts and products may be new or equivalent to new in performance. Such parts and products will be furnished on an exchange basis and the returned parts and products will become the property of AT&T. AT&T's preventive and remedial maintenance Service obligations hereunder do not include, and AT&T is not otherwise obligated to provide replacement parts, software releases, second tier help desk support, updates, or maintenance Service resulting in CPE functionality which exceeds that expressly provided in manufacturers' or suppliers' specifications at the time such product was installed (including Year 2000 functionality).

D.  AT&T makes no guarantee as to parts availability on Equipment that has been discontinued by its manufacturer. In the event a manufacturer discontinues producing any Equipment or in the event the Equipment has outlived the manufacturer's suggested product life cycle, AT&T shall continue to provide Service under the Maintenance Plan for as long as parts are available on a commercially reasonable basis. In the event repair parts are not readily available, AT&T shall advise Customer and Customer shall have the option to replace the Equipment with a similar product at AT&T's then prevailing rates. In the event Customer declines to authorize such replacement, AT&T shall delete such Equipment from this Addendum and cease providing Service for such Equipment, and AT&T will issue, if applicable, a pro-rata refund for such deletion.

E.  The periodic charges specified herein include all the stated maintenance Service performed at any time in connection with Emergencies and Non-Emergencies during Normal Business Hours. An "Emergency" is defined as any malfunction that leaves Customer unable to place or receive calls through the CPE, or any other failure agreed to in writing by the Parties.

F.  Service performed outside of Normal Business Hours or outside the scope of the Maintenance Plan will be charged on a per occurrence basis billed in fifteen (15) minute increments with a minimum of two (2) hours at AT&T's then prevailing hourly or premium hourly rate including travel time to and from Customer's Site. Customer shall also be responsible for travel and living expenses, when required. Provisioning of such Service shall be at the discretion of AT&T and shall be subject to the availability of personnel and parts, if applicable.

G.  In the event AT&T responds to Customer's request for Service and AT&T reasonably determines that the problem was not caused by the Equipment maintained herein, Customer will be responsible for additional charges for such response at AT&T's then prevailing rates.

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

H.
AT&T's responsibility with respect to its obligation to provide maintenance Service under this Addendum shall be limited to the Customer's side of the CPE residing on the Demarcation Point ("Demarcation Point" is defined as the point between facilities controlled or owned by the local telephone carrier and those facilities controlled or owned by Customer). Maintenance Services include maintenance as described herein for: (i) the CPE and/or associated system software stated herein; and (ii) such other equipment and/or software which is subsequently added to this Addendum by an Order, attachment or other applicable document. In the event that AT&T responds to Customer's request for Service and Customer's claim of CPE malfunction is due to problems on the local telephone utility's side of the Demarcation Point due to malfunctions in equipment or software other than that covered by this Addendum, Customer will be responsible for additional charges for such response in accordance with AT&T's then prevailing rates.

I. AT&T may suspend performance or terminate this Addendum if Customer fails to pay all amounts due by the applicable due date and such failure is not cured within 10 days of receiving AT&T's notice of non-payment.

## 3   SHIPPING AND DELIVERY

A. All shipping, transportation and delivery charges for the Equipment, including expedites, shall be paid by Customer. AT&T shall use commercially reasonable efforts to deliver the Equipment by the delivery date specified in this Addendum. Customer may, upon written notice to AT&T no later than ten (10) days prior to delivery, postpone the delivery, installation or Cutover dates specified in this Addendum one (1) time.

B. Such postponement shall not exceed thirty (30) days from the originally scheduled delivery, installation or Cutover dates and is subject to price changes.

## 4   INSTALLATION AND CUTOVER.

In the event AT&T connects the Equipment or installs the Software on such Customer owned equipment, AT&T shall not be liable for any damage to such Customer owned equipment, unless due to AT&T's sole negligence. AT&T shall use commercially reasonable efforts to complete installation and Cutover of the Equipment by the dates specified in this Addendum. Cutover shall be deemed accomplished upon connection to the telephone network to place and receive calls. Cutover of Equipment that is not dependent on the telephone network will occur when the Equipment is operational.

## 5   WARRANTY AND WARRANTY EXCLUSIONS.

A. Unless otherwise provided within Bill of Materials, Statement of Work or other attachment, the "Warranty Period" for Equipment shall be twelve (12) months (and in the case of AT&T-provided Software related to the Equipment, ninety (90) days (or such longer period provided by AT&T's applicable Software licensor)) from the date of delivery to the carrier for shipment, or from the date of installation when AT&T provides installation (or from such other date as determined by the applicable Equipment/Software manufacturer/licensor). AT&T warrants that during the Warranty Period, the CPE/Software shall materially conform to the manufacturer's/licensor's published specifications. If Customer notifies AT&T of a material defect during the Warranty Period, AT&T shall, at AT&T's sole option, repair or replace the Equipment/Software, free of charge to Customer. AT&T's repair or replacement of CPE/Software shall be Customer's sole remedy for breach of the warranty as stated herein. All warranty Services will be performed during Normal Business Hours.

B. During the Warranty Period, any change in the location of CPE must be performed by AT&T and shall be at Customer's expense.

C. Customer may request maintenance Service twenty-four (24) hours a day, seven (7) days a week by calling AT&T. If Customer's problem is an Emergency, AT&T will use reasonable commercial efforts to respond to Customer's report of a malfunction by dispatching a technician to the Site or by beginning remote diagnosis, as appropriate within two (2) business hours for PBX systems and four (4) business hours for key, hybrid or any other system, and will complete the appropriate repairs as soon as reasonably practical. Remote diagnostics require customer provided access line and remote access device on all covered equipment with capabilities.

D. In the event the problem is a non-Emergency, AT&T shall use reasonable commercial efforts, within eight (8) business hours after Customer's problem is reported, to either: (i) commence repair or replacement from a remote location, (ii) dispatch Service personnel to Customer's site, or (iii) ship replacement CPE as soon as practical, provided, however, Customer must return the defective CPE within ten (10) days or AT&T shall invoice Customer for the full replacement cost. AT&T reserves the right to inspect all defective CPE and AT&T shall have final determination of the status of such CPE.

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

## 6    MAINTENANCE PLAN DESCRIPTIONS.

### A.  SBC PremierSERV℠ Voice CPE Support Services – Complete.

1    AT&T shall provide maintenance Services, including parts, for CPE as well as any intra-building distribution cables provided by AT&T in connection with the CPE listed hereto, which may include wire, terminals, protectors or connectors;

2    Customer may request maintenance Service twenty-four (24) hours a day, seven (7) days a week by calling AT&T. If Customer's problem is an Emergency, AT&T will use reasonable commercial efforts to respond to Customer's report of a malfunction by dispatching a technician to the Site or by beginning remote diagnosis, as appropriate, within two (2) hours for PBX systems and four (4) hours for key, hybrid or any other system, and will complete the appropriate repairs as soon as reasonably practical;  Remote **diagnostics require customer provided access line and remote access device on all covered equipment with capabilities.**

3    In the event the problem is a non-Emergency, AT&T shall use reasonable commercial efforts, within eight (8) business hours after Customer's problem is reported, to either: (1) commence repair or replacement from a remote location, (2) dispatch service personnel to Customer's Site, or (3) ship replacement CPE as soon as practical, provided, however, Customer must return the defective CPE within ten (10) days or AT&T shall invoice Customer for the full replacement cost. AT&T reserves the right to inspect all defective CPE and AT&T shall have final determination of the status of such CPE

### B.  SBC PremierSERV℠ Voice CPE Support Services – Essential.

1    AT&T shall provide maintenance Services, including parts, for CPE as well as any intra-building distribution cables provided by AT&T in connection with the CPE listed hereto, which may include wire, terminals, protectors or connectors.

2    Customer may request maintenance Service twenty-four (24) hours a day, seven (7) days a week by calling AT&T. If Customer's problem is an Emergency, AT&T will use  reasonable commercial efforts to respond to Customer's report of a malfunction by dispatching a technician to the Site or by beginning remote diagnosis, as appropriate within two (2) business hours for PBX systems and four (4) business hours for key, hybrid or any other system, and will complete the appropriate repairs as soon as reasonably practical. Remote diagnostics require customer provided access line and remote access device on all covered equipment with capabilities.

3    In the event the problem is a non-Emergency, AT&T shall use reasonable commercial efforts, within eight (8) business hours after Customer's problem is reported, to either: (1) commence repair or replacement from a remote location, (2) dispatch service personnel to Customer's Site, or (3) ship replacement CPE as soon as practical, provided, however, Customer must return the defective CPE within ten (10) days or AT&T shall invoice Customer for the full replacement cost. AT&T reserves the right to inspect all defective CPE and AT&T shall have final determination of the status of such CPE. "Business hours" refers to services performed during Normal Business Hours. Any Services performed outside of the Normal Business Hours shall be performed within mutually agreed to time periods.

### C.  SBC PremierSERV℠ Voice CPE Support Services – Dedicated.

1    AT&T will provide technician, Customer Service Representative, Project Manager, or other agreed upon resource(s) as set forth herein or within an associated Statement of Work, on an annual basis to perform installation, maintenance, and/or move, add or change activities.

2    AT&T shall, at its sole discretion, assign either a qualified AT&T employee or contractor ("Resource") or a combination of both to provide Services to Customer during Normal Business Hours.

3    Each Resource will be granted time off for lunch and breaks as mandated by any labor agreement, Federal, State, County or City laws that are applicable. Customer must provide adequate office facilities/quarters/storage for Resource to administer daily responsibilities.

4    ) Customer may also purchase optional replacement parts coverage associated with Dedicated. AT&T shall provide maintenance Services, including parts, for CPE as well as any intra-building distribution cables provided by AT&T in connection with the CPE listed hereto, which may include wire, terminals, protectors or connectors.

5    Customer may request maintenance Service twenty-four (24) hours a day, seven (7) days a week by calling AT&T. If Customer's problem is an Emergency, AT&T will use reasonable commercial efforts to respond to Customer's report of a malfunction by dispatching a technician to the Site or by beginning remote diagnosis, as appropriate within two (2) business hours for PBX systems and four (4) business hours for key, hybrid or any other system, and will complete the appropriate repairs as soon as reasonably practical. Remote diagnostics require customer provided access line and remote access device on all covered equipment with capabilities. Any Services performed outside of the Normal Business Hours shall be performed within mutually agreed to time periods.

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

4809294

02:38:27 p.m.    02-05-2007    45 /46

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

D. **SBC PremierSERVSM Voice CPE Support Services – Custom.** Custom provided maintenance shall include the Services as agreed to by Parties as described in the document.

E. **Contact Center Software Support Services Option:**

If selected on page 2 above, Customer elects to purchase AT&T Software Support Services as additional support to the selected maintenance plan. The additional support is described below:

1. AT&T's software support services may include preventive and/or remedial maintenance, as required by AT&T or its supplier. The software support services may also include technical telephone consultation and diagnostic assistance, problem origination and expedite resolution. Software support services are typically performed remotely. AT&T may provide on-site support services as AT&T deems necessary. AT&T's preventive and remedial software support services obligation hereunder do not include, and is not otherwise obligated to provide software releases, updates, upgrades or maintenance service resulting in Contact Center Software functionality which exceeds that expressly provided in AT&T's or its suppliers' specifications at the time such Software was installed (including Year 2000 functionality). Any software which is at a revision level not supported by the software licensor will be excluded from coverage.

   A. **Contact Center Software Support Services – Complete.** This service option is available with the SBC PremierSERVSM Voice CPE Support Services - Complete Maintenance Plan. Customer may request software support service twenty-four (24) hours a day, seven (7) days a week by calling AT&T. If Customer's problem is Severity Level 1 (as described herein), AT&T shall, within two (2) hours after Customer's notification is logged in at AT&T's Data Services Customer Care Center (DSCC), commence error correction activity from a remote location. In the event AT&T does not respond within two (2) hours to Customer's Severity Level 1 (as described herein), the problem will be escalated. If Customer's problem is a Severity Level 2 or 3 (as described herein), AT&T shall use reasonable efforts, within eight (8) business hours after Customer's problem is logged in by the DSCC, to commence error correction activity from a remote location.

   B. **(b) Contact Center Software Support Services – Essential.** This service option is available with the SBC PremierSERVSM Voice CPE Support Services - Essential Maintenance Plan. Customer may request maintenance service twenty-four (24) hours a day, seven (7) days a week by calling AT&T. If Customer's problem is Severity Level 1 (as described herein), AT&T shall, within two (2) business hours after Customer's notification is logged in at AT&T's DSCC commence error correction activity from a remote location. In the event AT&T does not respond within two (2) business hours, during AT&T's Normal Business Day, to Customer's Severity Level 1 (as described herein), the problem will be escalated. If Customer's problem is a Severity Level 2 or 3 (as described herein), AT&T shall use reasonable efforts, within eight (8) business hours, after Customer's problem is logged in by the DSCC, to commence error correction activity from a remote location, during AT&T's Normal Business Day.

2. **Severity Levels Defined**

   A. **Severity Level 1** - Application is inoperative; inability to use application materially impacts Customer's operations. If a bypass procedure is not utilized, AT&T will continue error correction activity according to selected maintenance plan or optionally, on a time and materials basis. In addition, AT&T shall provide verbal status reports on Severity Level 1 errors at intervals of no less than twice per day to designated Customer support representative, until a bypass is found.

   B. **Severity Level 2** - Application is usable with limited functions. Error condition is not critical to continuing operation. Customer or AT&T has determined the method of work around for the error condition.

   C. **Severity Level 3** - Application is usable, but a minor problem exists.

F. **Software Release Subscription Services Option (Applies to Nortel products).** As additional support to the selected Maintenance Plan and Contact Center Software Support Services option, Customer elects to purchase Software Release Subscription Services as described below:

1. Software Release Subscription (SRS) provides entitlement to new General Announcement (GA) releases of software as approved for use by AT&T for specified Nortel Networks Enterprise Systems (Nortel) at a fixed price. SRS is a non-transferable, non-refundable contracted service offering, which provides customers access to future major and minor software releases, "like-for-like" with existing customer owned software for the term of the SRS Service Plan. Hardware, labor or maintenance costs associated with any upgrades are not covered and any licenses/software that are added during the term of the SRS Service Plan will incur additional charges. In accordance with this agreement, all system hardware upgrades, software upgrades, Moves, Adds, Changes, and repairs must be performed by AT&T. Failure to adhere to this policy will result in additional charges or cancellation of this agreement.

2. AT&T makes no guarantees as to the number of new software releases that will be released by the manufacturer for the term of the SRS Service Plan. Once AT&T has approved a new software release for general availability, the customer may notify their Sales Representative of their desire to upgrade. Failure to upgrade to the latest software release may result in incompatibility with new or existing applications. Additional charges will be incurred to upgrade if software release is not kept at the current level.

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

Addendum to Master Agreement for
SBC PremierServ℠ Voice CPE support Services

3    AT&T is not otherwise obligated to provide software release information, updates, upgrades or maintenance service resulting in Software functionality which exceeds that expressly provided in AT&T's or its suppliers' specifications at the time such Software was installed (including Year 2000 functionality). Section 3.9, of the Master Agreement (Warranties; Disclaimer of other Warranties) applies to any software subscription by Customer under this Section.

## 7    AGENCY

During the term of this Addendum, Customer will not permit any other person to maintain, repair or modify the CPE or to connect any other equipment. To the extent necessary for AT&T to perform its Services under this Addendum, Customer agrees that AT&T will be Customer's Site agent to represent Customer in any dealings with any telephone company or government agency with respect to CPE maintenance provided hereunder. Customer assumes all ongoing responsibility of directory listings, credit cards, system security, billing arrangements and other items not related to Equipment or Services provided by AT&T unless expressly stated otherwise under this Addendum or some other express written agreement between Customer and AT&T.

## 8    CHANGE IN EQUIPMENT

AT&T will have the right and option of conducting periodic equipment reviews for additions and/or deletions which may have occurred and all service pricing shall be adjusted accordingly. In the event that Customer terminates this Addendum, or reduces the grade of Services provided hereunder prior to expiration of the term(s) herein, the 50% early termination liabilities set forth in the Master Services Agreement will apply unless otherwise noted.

## 9    RENEWAL

Unless terminated by either Party upon at least thirty (30) days written notice prior to expiration of the then existing Term, and to avoid Service interruption, the then current Term of any services included in this Addendum shall automatically extend for consecutive one (1) year Term(s) at AT&T's then current pricing for such Services. Upon extension of any Maintenance or Service Plan, the services provided by AT&T shall remain unchanged (except with respect to pricing) unless both Parties agree in writing to any changes at the time of extension. AT&T may only increase the price of the Maintenance or Service Plans provided herein at: (i) the expiration of the initial term; (ii) commencement of any subsequent extension term; or (iii) the time Equipment is changed, upgraded or added to this Addendum. AT&T will provide Customer with a 30 day notice of such increases.

## 10   SBC CAPITAL SERVICES ("SBC-CS") FINANCING OPTION.

☐    _____ (Customer initials)

Customer elects to finance the Total Purchase Price through SBC-CS. Customer hereby requests that AT&T invoice SBC-CS and arrange for payment as described below:

AT&T will invoice Customer in care of SBC-CS for 100% of the Total Purchase Price upon Cutover (as defined in the Agreement) and the invoice shall be paid promptly after its delivery to SBC-CS, provided that all required lease documentation has been properly executed and received by SBC-CS. If all lease documentation is not executed and received by SBC-CS Customer agrees and will pay the Total Purchase Price to AT&T upon receipt of an invoice from AT&T.

### END OF DOCUMENT

Confidential Information
This agreement is for use by authorized employees of the Parties
and is not for general distribution in or outside the respective companies.

# Exhibit

# D

 **at&t**

**AT&T Capital Services, Inc.**

2000 W. AT&T Center Drive
Hoffman Estates, IL  60192-5000
Office:  800/346-8082
Fax:     847/427-5058

# CompleteLease (SM)
# Agreement

**Number:** 001-3814200-002
**Dated:**  February 1, 2007

## Lessee

| | | |
|---|---|---|
| Customer full legal name<br>WTL FINANCIAL, INC. | | Trade name, if applicable |
| Telephone number<br>(800) 308-9849 | Fax number | State of Formation<br>CA | Federal Employer Identification Number |
| Contact Name<br>CHRISTOPHER WARREN | | E-Mail Address<br>christopher@wtlfinancial.net | |
| Headquarter Address<br>3127 FITE CIRCLE STE E | City<br>SACRAMENTO | State<br>CA | Zip<br>95827 | County |
| Equipment location<br>9300 TECH CENTER DRIVE SUITE 160 | City<br>SACRAMENTO | State<br>CA | Zip<br>95826 | County |

## Equipment Detail

Equipment Description
Nortel CS 1000M PBX System, Tindi Package, CP4.0 20ii System, M3902 & M3904 Tel Sets, all with attachments, accessories and related peripherals, install, Project Management, Training, Warranty, Freight and buyout of existing lease contract 3814200-001

Equipment Supplier  SBC Business Comm Srvcs

## Schedule of Rental Payments

Purchase option:
One Dollar

| Down Payment (if applicable)*<br>(plus applicable taxes) | Term of Lease (in months)<br>36 | Total number of rental payments: 36  in  Advance |
|---|---|---|
| *Payable to AT&T Capital Services, Inc. and due upon execution of this Agreement. | | |
| Payment frequency:<br>Monthly | | Payments**:    36 at $7,011.30 (plus applicable taxes)<br>___ at ___ (plus applicable taxes)<br>**Payments may be indexed up until lease commencement. |

## Acknowledgement

Lessee hereby certifies that he/she has read and agrees to all of the terms and conditions set forth on pages 1-3 of this CompleteLease (SM) Agreement.

| | |
|---|---|
| **Accepted By**<br>THIS LEASE IS NOT BINDING UNTIL ACCEPTED BY LESSOR. |
| Lessee Name<br>WTL FINANCIAL, INC.<br>DBA: | Lessor Name<br>**AT&T CAPITAL SERVICES, INC.** |
| Name and Title (please print)<br>X | Name and Title (please print) |
| Signature<br>X | Signature |

## Unconditional Continuing Personal Guaranty

The undersigned (if more than one, then jointly and severally) unconditionally and irrevocably guarantees to Lessor and its successors and assigns, the prompt payment of all sums due under this Lease and further guaranties the performance by Lessee of all the terms and conditions thereunder, regardless of any invalidity or unenforceability thereof. The undersigned agrees to pay all costs and expenses, including but not limited to attorney's fees, incurred by Lessor in enforcing the Lease and the Guaranty. The undersigned waives notice of acceptance, presentment, demand, protest, notice of protest or notice of default and acknowledges that Lessor may proceed directly against the undersigned without first proceeding against Lessee. The undersigned waives trial by jury and consents and submits to personal jurisdiction in the state and/or federal courts of Illinois and consents to venue in any county in which Lessor maintains an office. This guaranty shall bind the heirs, representatives, successors and assigns of the undersigned.

| Guarantor #1 name and home address (please print) | | Guarantor #2 name and home address (please print) | |
|---|---|---|---|
| Signature (individually; no titles) | Date | Signature (individually; no titles) | Date |

Form. Rev. 5-1-06

**EXHIBIT**
tabbies
D

## Terms and Conditions

**1. LEASE** - Subject to the terms and conditions of this CompleteLease Agreement (the "Lease"), Lessee agrees to lease from Lessor, the equipment (including all replacements, repairs, attachments and additions incorporated therein or affixed hereto, collectively the "Equipment") described on page 1 of this Lease. The Lease shall commence on the date the Equipment is accepted by the Lessee if it falls on the first day of a month ("Commencement Date") and shall continue for the number of months specified in the Lease ("Initial Term"). If the Commencement Date is other than the first day of the month, the Lessee shall make an initial prorated rental payment from the Commencement Date (including such date) through the last day of such month and the Initial Term shall commence on the first day of the following month.

**2. RENT** - During the Initial Term and any renewal term of the Lease, Lessee agrees to pay Lessor total rent equal to the aggregate number of rental payments multiplied by the amount of each payment (plus taxes) specified on page 1 of the Lease. The due date of the first rent payment is the date upon which the Equipment is delivered to Lessee or any later date designated by Lessor. Restrictive endorsements on checks sent to Lessor will not reduce Lessee's obligations to Lessor.

**3. NON-CANCELABLE LEASE** - Lessee's obligation to make Lease payments and to pay any other amounts due hereunder shall be ABSOLUTE AND UNCONDITIONAL and shall not be subject to any delay, cancellation, termination, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever. This is an irrevocable Lease for the full term and cannot be cancelled.

**4. DELIVERY, INSTALLATION AND ACCEPTANCE** - Lessee understands that Lessor is not responsible for delivery or installation of the Equipment. Lessee holds Lessor harmless from specific performance of this Lease and from any damages if for any reason the manufacturer, supplier, vendor or distributor (collectively referred to in this lease as "Vendor") delays in delivery, or if the Equipment is unsatisfactory. After delivery of the Equipment to Lessee or after installation, if installation is included, Lessee shall have no more than ten (10) days to test the Equipment and deliver a signed certificate of acceptance or written notification of material defect(s) to Lessor. If Lessee fails to deliver a signed certificate of acceptance or written notice of material defect(s) to Lessor within this timeframe, the Equipment shall be deemed accepted by the Lessee as of the tenth day.

**5. WARRANTY DISCLAIMER** - LESSEE AGREES THAT IT HAS SELECTED THE VENDOR AND EACH ITEM OF EQUIPMENT BASED UPON ITS OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSOR MAKES NO WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND LESSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF, OR THE INABILITY TO USE, THE EQUIPMENT. WARRANTIES MADE BY THE VENDOR TO THE LESSOR SHALL INURE TO THE BENEFIT OF THE LESSEE, TO THE EXTENT ASSIGNABLE. IF THE EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED, WARRANTED OR GUARANTEED BY VENDOR, OR IS UNSATISFACTORY FOR ANY REASON, LESSEE SHALL MAKE ITS CLAIM AND ANY COMPLAINT THEREFOR AGAINST VENDOR, AND NOT AGAINST LESSOR AND SHALL CONTINUE TO MAKE ALL RENTAL AND OTHER PAYMENTS REQUIRED HEREUNDER. LESSOR DISCLAIMS ANY WARRANTY THAT THE EQUIPMENT IS DELIVERED FREE OF THE RIGHTFUL CLAIM OF ANY PERSON BY WAY OF INFRINGEMENT OR SIMILAR CLAIM. LESSEE ACKNOWLEDGES THAT VENDOR IS NOT AN AGENT OF LESSOR AND STATEMENTS OR REPRESENTATIONS OF THE VENDOR SHALL NOT BIND OR AFFECT LESSOR, AND SHALL NOT AFFECT THE LESSEE'S OBLIGATIONS UNDER THIS LEASE. LESSOR ASSUMES NO RESPONSIBILITY FOR THE INSTALLATION, ADJUSTING OR SERVICING OF THE EQUIPMENT.

**6. NO AGENCY** - Lessee acknowledges that (1) there is no agency or joint venture between Lessor and the Vendor; (2) neither the Vendor nor any other person is authorized to act on Lessor's behalf; and (3) ONLY AN INDIVIDUAL AUTHORIZED BY LESSOR IS PERMITTED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE.

**7. ASSIGNMENT** - LESSEE WILL NOT SELL, ASSIGN, SUBLET, PLED OR OTHERWISE ENCUMBER, OR PERMIT A LIEN TO EXIST ON AGAINST ANY INTEREST IN THIS LEASE, OR THE EQUIPMENT, REMOVE THE EQUIPMENT FROM ITS LOCATION REFERRED TO PAGE 1, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT. LESS MAY ASSIGN ITS INTEREST IN THIS LEASE AND SELL OR GRANT SECURITY INTEREST IN ALL OR ANY PART OF THE EQUIPME WITHOUT LESSEE'S CONSENT. LESSEE AGREES THAT IN A ACTION BROUGHT BY AN ASSIGNEE AGAINST LESSEE TO ENFOR LESSOR'S RIGHTS HEREUNDER, LESSEE WILL NOT ASSERT AGAIN SUCH ASSIGNEE, AND EXPRESSLY WAIVES AS AGAINST A ASSIGNEE, ANY BREACH OR DEFAULT ON THE PART OF LESSO HEREUNDER OR ANY OTHER DEFENSE, CLAIM OR SET-OFF WHI LESSEE MAY HAVE AGAINST LESSOR, EITHER HEREUNDER C OTHERWISE. NO SUCH ASSIGNEE SHALL BE OBLIGATED T PERFORM ANY OBLIGATION, TERM OR CONDITION REQUIRED TO E PERFORMED BY LESSOR HEREUNDER.

**8. TITLE** - Lessor is the owner of the Equipment and has title to th Equipment. If any other person attempts to claim ownership of the Equipme by asserting that claim against Lessee or through Lessee, Lessee agrees, i its expense, to protect and defend Lessor's title to the Equipment. Lessee further agrees that it will at all times keep the Equipment free from any lega process, encumbrance or lien whatsoever, and Lessee shall give Lessc immediate notice if any legal process, encumbrance or lien is asserted c made against the Equipment.

**9. SECURITY INTEREST** - To the extent applicable, and to further secure payments hereunder, Lessee grants to Lessor a security interest in the Equipment and all additions, attachments, accessions and substitutions thereof and all proceeds of the foregoing.

**10. QUIET ENJOYMENT** - Provided that no Event of Default (as defined in Section 19 herein) has occurred or is continuing hereunder, Lessor shall not interfere with Lessee's right to quiet enjoyment and use of the Equipment.

**11. CARE, USE AND LOCATION** - Lessee is responsible for installing and keeping the Equipment free from damage and in good working order and repair. Lessee will keep and use the Equipment only at the address shown on page 1, and will only use it for business purposes and in compliance with all applicable laws. Lessee will not make any alterations to or relocate the Equipment without Lessor's prior written consent, nor will Lessee permanently attach the Equipment to any real estate. At the termination of this Lease, Lessee will return the Equipment to Lessor at a location designated by Lessor, at Lessee's expense. Lessee shall, at Lessor's request, affix to the Equipment, tags, decals or plates furnished by Lessor indicating Lessor's ownership and Lessee shall not permit their removal or concealment.

**12. RISK OF LOSS** - From the date the Equipment is delivered to Lessee until it is returned to Lessor, Lessee shall bear the entire risk of loss, theft, destruction or damage to the Equipment or to any part thereof from any cause whatsoever. No loss, theft, destruction or damage to the Equipment shall relieve Lessee of the obligation to pay rent or any other obligation under this Lease. In the event of loss, theft, destruction or damage of any kind to any item of Equipment, Lessee shall notify Lessor and at the option of Lessor, Lessee shall (a) place the Equipment in good condition and repair, or (b) replace the Equipment with identical equipment of at least equal value in good condition and repair with clear title given to Lessor, or (c) pay Lessor an amount equal to 1) all rent and other amounts then due and owing, and 2) the unpaid balance of rentals for the remaining term of the Lease (discounted to present value at a rate of 3%) plus an amount equal to the estimated Fair Market Value (as defined herein) of the Equipment at the time of the loss.

**13. TAXES AND FEES** - Lessee shall pay when due and shall indemnify Lessor for, and hold Lessor harmless from and against all federal, state, and local filing fees, assessments, taxes including without limitation, sales, lease, use, excise and personal property taxes (excluding only taxes payable with respect to Lessor's net income) which may be imposed on the Lessor arising in any way out of the ownership, use, possession or leasing of the Equipment. Such amounts shall be considered additional rent and shall be payable by Lessee upon demand by Lessor.
Lessee acknowledges that Lessor may be taking certain tax benefits available to the owner of the Equipment, including depreciation benefits under the

001-3814200-002  Lessee Initials _____

Form. Rev. 5-1-06

Modified Accelerated Cost Recovery System set forth in the Internal Revenue Code of 1986, as amended ("Tax Benefits"). Lessee agrees that it will take no action inconsistent with the foregoing and that it will indemnify Lessor on an after-tax basis for any loss of Tax Benefits due to Lessee's action. Upon Lessor's written notice to Lessee that a loss of Tax Benefits has occurred, Lessee will reimburse Lessor for the amount of the tax loss. The obligations under this section shall survive the expiration or termination of this Lease.

**14. INDEMNITY** - Lessee hereby indemnifies Lessor and holds Lessor harmless from any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney's fees, arising out of or connected with the Equipment or the use thereof, including without limiting the generality of the foregoing, its manufacture, selection, delivery, possession, use, leasing, fitness operation, return, or latent or other defects, whether or not discoverable, or arising out of any failure by Lessee to perform or comply with any of the terms and conditions of this Lease. The indemnities contained herein shall continue in full force and effect notwithstanding the termination of this Lease, whether by expiration of time, by operation of law, or otherwise. Lessee is an independent contractor and nothing contained in this Lease shall authorize Lessee or any other person to operate or use any Equipment so as to incur any obligation on behalf of Lessor or impose any liability on Lessor.

**15. INSURANCE** - Lessee shall obtain and maintain on or with respect to the Equipment at its own expense (a) liability insurance insuring against liability for bodily injury and property damage and (b) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the original cost of the Equipment. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies to Lessee, naming Lessor as an additional insured and loss payee thereunder. Each such policy shall be in such form and with such insurers as may be satisfactory to Lessor, including clauses requiring the insurer to give to Lessor at least 30 days prior written notice of any alteration or cancellation thereof.

**16. END OF TERM OPTIONS** - Provided Lessee has fulfilled all of its obligations herein and is not in default hereunder, upon expiration of a FMV Lease, the Lessee may, upon irrevocable written notice to Lessor at least ninety (90) but not more than one hundred eighty (180) days prior to the expiration of the Initial Term, purchase all (but not less than all) of the Equipment at its Fair Market Value. Fair Market Value is the price at which a buyer under no compulsion to buy would purchase the Equipment at retail from a seller under no compulsion to sell. In the event the "One Dollar" or "Other" box is indicated, Lessee shall pay the corresponding amount to Lessor to release the security interest referred to in Section 9.

**17. EXPIRATION; EXTENSION** - SUBJECT TO SECTION 16 HEREOF, UNLESS LESSEE NOTIFIES LESSOR IN WRITING NINETY (90) DAYS PRIOR TO THE EXPIRATION OF THIS LEASE OF ITS INTENTION TO TERMINATE THIS LEASE AT ITS EXPIRATION DATE (ONLY IF THE "FMV" BOX IS INDICATED), THEN THIS LEASE SHALL BE EXTENDED UPON ALL OF THE TERMS AND CONDITIONS AS STATED HEREIN FOR A PERIOD OF (90) DAYS FROM ITS EXPIRATION DATE WITHOUT THE NECESSITY OF THE EXECUTION OF ANY FURTHER DOCUMENTS AND SHALL CONTINUE FROM MONTH TO MONTH THEREAFTER UNDER THE SAME TERMS AND CONDITIONS UNTIL TERMINATED.

**18. REDELIVERY OF EQUIPMENT** - Provided ninety (90) days prior written notice has been given to Lessor, upon termination of this Lease, Lessee shall disconnect, properly package for transportation and return all (not part) of the Equipment, freight prepaid, to a location designated by Lessor, in good repair, condition and working order, and be eligible for acceptance by the manufacturer or maintenance organization. If upon expiration or termination, Lessee does not immediately return the Equipment as required herein, Lessee may, at its option, (a) arrange for removal of the Equipment and Lessee agrees to pay Lessor an amount equal to two (2) rent payments, or (b) automatically renew the Lease on the same terms and conditions for successive one-year periods at the same rental as in this Lease, subject to the right of either party to terminate the Lease upon six (6) months written notice (at the expiration of such notice, Lessee will deliver the Equipment to Lessor under the terms of this section).

**19. DEFAULT AND REMEDIES** - If Lessee (a) does not pay rent within ten (10) days after the same becomes due, (b) breaches any of its representations, warranties or other obligations under the Lease, (c) is in default under any other agreement between Lessee and Lessor (d) becomes insolvent or assigns its assets for the benefit of its creditors, or (e) enters voluntarily or involuntarily a bankruptcy proceeding ("Event(s) of Default"), Lessee will be in default. Upon the occurrence of an Event of Default, Lessor may require that Lessee return the Equipment to Lessor and pay the remaining balance of all of the rental payments due under this Lease. If

Lessee fails to return the Equipment to Lessor, in addition Lessor can require that Lessee pay the Lessor's residual interest in the Equipment. Lessee also represents to Lessor that interest on all sums due Lessor from date of default until paid will be at the rate of one and one-half percent (1⁄2%) per month, but only to the extent permitted by law. In addition, Lessee shall be entitled to recover from Lessee any of the remedies available under the Uniform Commercial Code ("UCC") or any other law. If Lessor refers Lease to an attorney or collection agency for enforcement or collection, Lessee agrees to pay the cost of repossession, storing, shipping, repairing expenses. Lessee agrees that Lessor is not required to notify Lessee that it selling the Equipment.

**20. OTHER RIGHTS** - Lessee agrees that any delay or failure to enforce Lessor's rights under this Lease does not prevent Lessor from enforcing its rights at a later time. Lessee and Lessor intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable all other parts will remain in full force and effect. If this document is found not to be a Lease, then Lessee grants Lessor a security interest in the Equipment. Lessee hereby appoints Lessor, its agents, successors or assigns its true and lawful attorney-in-fact for the limited purpose of executing and filing on behalf of Lessee any and all UCC Financing Statements which in Lessor's sole discretion are necessary or proper to secure Lessor's interest in the Equipment in all applicable jurisdictions.

**21. ENTIRE AGREEMENT; CHANGES** - This Lease contains the entire agreement between Lessee and Lessor and supersedes all previous discussions and the terms and conditions of any purchase orders issued by and/or by Lessee and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by Lessee and Lessor. To the extent permitted by law, Lessor may charge Lessee a documentation and administration fee of $100.00, if for any reason this Lease does not commence. The descriptive headings hereof do not constitute a part of the Lease and no inferences shall be drawn therefrom. Whenever the context of the Lease requires, the masculine gender includes the feminine or neuter, and the singular number includes the plural, and whenever the word Lessor is used herein, it shall include all assignees of Lessor. If there is more than one Lessee named in the Lease, the liability of each shall be joint and several. This Lease is subject to the Illinois Credit Agreements Act.

**22. NOTICES** - All of Lessee's notices to Lessor must be sent by certified mail or recognized overnight delivery service, postage prepaid, to Lessor's address stated in this Lease. Lessor's notices to Lessee may be sent first class mail, postage prepaid, to Lessee's address stated in this Lease.

**23. MISCELLANEOUS** - Lessee and Lessor intend and agree that a photocopy or facsimile of this Lease and all related documents, including but not limited to the Acceptance Certificate, with their signatures thereon shall be treated as originals, and shall be deemed to be as binding, valid, genuine and authentic as an original-signature document for all purposes. This Lease is a "Finance Lease" as defined in Article 2A of the UCC.

**24. JURISDICTION** - This Lease shall be governed by the laws of the State of Illinois without regard to conflict of law principles. Any litigation arising out of or in relation to this Lease or any transaction contemplated hereby may be instituted in any federal or state court in Illinois, and Lessee waives any objection that it may now or hereafter have to venue in any such court and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any such litigation.

**25. LESSEE REPRESENTATIONS** - Lessee represents and warrants that (i) it has complete and unrestricted power to enter into this Lease, (ii) the persons executing this Lease have been duly authorized to execute this Lease on Lessee's behalf, (iii) all information supplied to Lessor is true and correct, including all credit and financial information (iv) it is able to meet all its financial obligations, including the rent payments hereunder, and (v) it disclaims any reliance on any representation by Lessor in entering into this Lease.

THE LOGO APPEARING ON THIS DOCUMENT IS A FEDERALLY REGISTERED TRADEMARK AND MAY NOT BE USED IN ANY WAY NOR MAY THIS DOCUMENT BE ALTERED OR MANIPULATED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF AT&T CAPITAL SERVICES, INC. LESSEE MAY TRANSFER THIS DOCUMENT FROM ELECTRONIC FORMAT TO A TANGIBLE ONE BY PRINTING IT IN ITS UNALTERED STATE.

001-3814200-002 Lessee Initials ⎰

Ann. Rev. 5-1-06



**AT&T Capital Services, Inc.**

2000 W. AT&T Center Drive
Hoffman Estates, IL 60192-5000
Office:  800/346-8082
Fax:    847/427-5058

# *Insurance Request*
CompleteLease(SM) Agreement
**Number:** 001-3814200-002
**Dated:**  February 1, 2007

## Lessee

| Customer full legal name | | Trade name, if applicable | |
|---|---|---|---|
| WTL FINANCIAL, INC. | | | |

| Telephone number | Fax number | State of Formation | Federal Employer Identification Number |
|---|---|---|---|
| (800) 306-9849 | | CA | |

| Contact Name | | E-Mail Address | |
|---|---|---|---|
| CHRISTOPHER WARREN | | christopher@wtlfinancial.net | |

| Headquarter Address | City | State | Zip | County |
|---|---|---|---|---|
| 3127 FITE CIRCLE STE E | SACRAMENTO | CA | 95827 | |

| Equipment location | City | State | Zip | County |
|---|---|---|---|---|
| 9300 TECH CENTER DRIVE SUITE 160 | SACRAMENTO | CA | 95826 | |

## Equipment Detail

**Equipment Description**
Nortel CS 1000M PBX System, Trndl Package, CP4.0 2011 System, M3902 & M3904 Tel Sets, all with attachments, accessories and related peripherals, install, Project Management, Training, Warranty, Freight and buyout of existing lease contract 3814200-001

**Equipment Supplier**
SBC Business Comm Srvcs

## Insurance

| Insurance Company/Agency | Agent/Broker Name | | |
|---|---|---|---|
| ✗ | ✗ | | |

| Address | City | State | Zip | Telephone Number |
|---|---|---|---|---|
| ✗ | ✗ | ✗ | ✗ | ✗ |

| Carrier (if different from above) | Policy Number | Expiration Date | |
|---|---|---|---|
| ✗ | ✗ | ✗ | |

Please notify your insurance company to forward a copy of your insurance certificate to our office.

## Policy Limits

Please amend the above policy to include coverage on the above-described Equipment as follows:

PHYSICAL DAMAGE COVERAGE in the amount of: the full replacement value of the Equipment
COMPREHENSIVE GENERAL LIABILITY COVERAGE in the amount of: $1,000,000 (combined single limit)

Please issue to Lessor at its address shown above, an endorsement to the above policy (1) naming Lessor as additional insured and loss payee, as its interest may appear on the Equipment, and (2) agreeing to give Lessor thirty (30) days prior written notice of the effective date of any alteration or cancellation of such policy.

## Acknowledgment

We appreciate your cooperation in attending to this matter as quickly as possible.

| Lessee Name |
|---|
| WTL FINANCIAL, INC. |

| Name and title (please print) |
|---|
| ✗ |

| Signature |
|---|
| ✗ |

Form Rev 5 1 04

 **at&t**

AT&T Capital Services, Inc.

2000 W. AT&T Center Drive
Hoffman Estates, IL 60192-5000
Office:  800/346-8082
Fax:     847/427-5058

# *ACCEPTANCE CERTIFICATE*

To Lessor:  The undersigned Lessee hereby certifies that all Equipment described in CompleteLease(SM) Agreement No. 001-3814200-002 has been delivered to Lessee and installed; that the Equipment has been inspected by Lessee and is in good operating order; and that the Equipment is accepted by Lessee for all purposes under the Lease.  Lessee hereby directs Lessor to pay the vendor for the Equipment.

| Lessee Name | |
|---|---|
| WTL FINANCIAL, INC. | |
| **Description of equipment** | |
| Nortel CS 1000M PBX System, Tmdi Package, CP4.0 201i System, M3902 & M3904 Tel Sets, all with attachments, accessories and related peripherals, Install, Project Management, Training, Warranty, Freight and buyout of existing lease contract 3814200-001 | |
| **Name and title (please print)** | **Date** |
| X | X |
| **Signature** | **Lease # (Office use only)** |
| X | |

Upon acceptance, please fax this certificate to the fax number above and mail to:

Claudia Rodriguez
AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Location No. 4C31F
Hoffman Estates, IL  60192-5000

Form Rev. 5-1-06

## CORPORATE GUARANTY OF PAYMENT

In consideration of the extension from time to time of credit and/or other financing accommodations by AT&T Capital Services, Inc. ("AT&T") to:

WTL FINANCIAL, INC.
Print Full Legal Name of Debtor

3127 FITE CIRCLE STE E, SACRAMENTO, CA 95827
Address

The undersigned hereby (jointly and severally, if more than one) absolutely, irrevocably and unconditionally guarantee(s) the full, prompt and faithful payment as due of any and all indebtedness of Debtor to AT&T, including any indebtedness which AT&T may now or hereafter purchase or otherwise acquire ("Indebtedness").

The undersigned hereby (jointly and severally, if more than one) absolutely, irrevocably and unconditionally further guarantee(s) the full, prompt and faithful performance by the Debtor of any and all terms, conditions and covenants required to be performed by the Debtor under any instrument or obligation evidencing or securing Debtor's Indebtedness to AT&T

IT IS AGREED THAT:

(a)    This is a continuing Guaranty.

(b)    This Guaranty shall be binding upon the undersigned, its successors and assigns.

(c)    The undersigned expressly waive(s) presentment, demand, protest or notice of any kind and hereby consent(s) to any extension of time of payment, performance, renewal or modification of any instrument or obligation of indebtedness guaranteed.

(d)    This Guaranty includes, without limitation (1) the full, prompt and faithful payment of the amount of any damage or deficiency suffered or incurred by AT&T by any reason of any default by Debtor in connection with any Indebtedness, and (2) the full, prompt and faithful payment of all attorney's fees, costs and expenses incurred by AT&T in the enforcement of this Guaranty.

(e)    No amendment, refinancing, extension or transfer of any instrument or obligation of Indebtedness guaranteed, or waiver or variation of any of the terms and conditions or change in the time or amount of payment due, or changes in the course of dealing between Debtor and Guarantor, shall affect the liability of the undersigned under this Guaranty.

(f)    All rights of AT&T shall inure to the benefit of its successors and assigns.

(g)    This Guaranty shall be governed by the laws of the State of Illinois without giving effect to conflict of law provisions. Any litigation arising out of or relating to this Guaranty may be instituted in any federal or state court in Illinois and Guarantor waives any objection that it may now or hereafter have to venue in any such court, including forum no conveniens, and irrevocably submits to the jurisdiction of any federal or state court in Illinois in any litigation.

(h)    Any provision of this Guaranty prohibited by law in any state shall, as to such state, be ineffective to the extent of such prohibition without invalidating any remaining provision of this Guaranty.

IN WITNESS WHEREOF, the undersigned represents that he (she) is authorized to execute this Guaranty, that has been executed on behalf of Guarantor and that it is effective as of the date signed.

Attest:

_____              TRINITY CREDIT COMPANY, INC.
Secretary                                      Print Guarantor Corporation's Name

                                               1676 BAYER COURT, FOLSOM, CA 95630
                                               Guarantor's Address

                                               By: _____    _____
                                                   Officer's Signature                 Date

                                               _____        _____
                                               Print Officer's Name                    Title

CORPORATE GUARANTY 5-1-2006

AT&T Capital Services, Inc.
2000 W. AT&T Center Drive
Hoffman Estates, IL 60192-8000

Sir/Madam:

In order to induce AT&T Capital Services, Inc. to enter into contracts with or extend credit or financing to WTL FINANCIAL, INC. (herein called DEBTOR), and in consideration of entering into such contracts, extensions of credit or financing, the undersigned hereby absolutely guarantees the full and prompt payment of any and every indebtedness, liability or obligation (howsoever arising and of any nature whatever), which may now or at any time and from time to time hereafter exist or be incurred by DEBTOR to AT&T Capital Services, Inc., together with all interest thereon and reasonable attorney's fees, costs and expenses of collection incurred by AT&T Capital Services, Inc. in connection therewith. In the event of default at any time by DEBTOR, the undersigned promises to pay such indebtedness, liability or obligation forthwith and without prior demand.

It is understood and agreed that AT&T CAPITAL SERVICES, INC. shall not be obligated by reason of this agreement to enter into contracts with or extend credit or financing to DEBTOR or customers of DEBTOR.

The undersigned hereby consents that AT&T CAPITAL SERVICES, INC. may, without in any manner affecting the undersigned's liability and upon such conditions as AT&T CAPITAL SERVICES, INC. may deem advisable: (1) extend in whole or in part (by renewal or otherwise), modify, premature, change or release any indebtedness, liability, or obligation of DEBTOR or of any other person; (2) sell, release, surrender, modify, impair, exchange, substitute or extend the duration or the time for the performance or payment of, any and all property, of any nature and from whomsoever received, held by AT&T CAPITAL SERVICES, INC. as security for the payment or performance of any indebtedness, liability or obligation of DEBTOR or of any other person to AT&T CAPITAL SERVICES, INC.; (3) settle, adjust, or compromise any of AT&T CAPITAL SERVICES, INC.'s claims against DEBTOR or any other person. The undersigned hereby ratifies and confirms any such extension, renewal, modification, prematuration, change, release, sale, surrender, impairment, exchange, substitution, settlement, adjustment or compromise, and agrees that the same shall be binding upon the undersigned, and hereby waives any and all defenses, counterclaims or offsets which the undersigned might or could have by reason thereof, it being understood that the undersigned, as guarantor hereunder, shall at all times be and remain liable to AT&T CAPITAL SERVICES, INC..

The undersigned hereby waives: (1) notice of (and acknowledges due notice of) acceptance of this Guaranty by AT&T CAPITAL SERVICES, INC. or of the creation, renewal or accrual of any liability of DEBTOR, present or future, or of AT&T CAPITAL SERVICES, INC.'s reliance upon this Guaranty (it being understood that any and every liability and obligation of DEBTOR to AT&T CAPITAL SERVICES, INC. shall conclusively be presumed to have been created, contracted or incurred in reliance upon this Guaranty); (2) demand of payment from any person indebted in any manner on or for any of the liabilities or obligations hereby guaranteed; (3) presentment for payment of any instrument of DEBTOR or any other person, protest thereof, and notice of its dishonor to any party thereto and to the undersigned; and (4) any right of contribution from guarantors other than the undersigned.

This Guaranty may be terminated (but only insofar as it relates to obligations of DEBTOR thereafter incurred) only upon written notice to that effect delivered by the undersigned to AT&T CAPITAL SERVICES, INC. and duly receipted for by AT&T CAPITAL SERVICES, INC.; and upon any such termination, the undersigned shall nevertheless remain liable with respect to all indebtedness, liabilities or obligations created or arising theretofore to the full extent of the undersigned's liability therefor as above set forth.

This Guaranty shall, without further consent of or notice to the undersigned, pass to, and may be relied upon and enforced by any of AT&T CAPITAL SERVICES, INC.'s affiliated, associated, or subsidiary companies or any successor or assignee of you and any transferee or subsequent holder of any of said indebtedness, liabilities or obligations.

This Guaranty shall be governed by the laws of the State of Illinois without giving effect to conflict of law provisions. The undersigned waives trial by jury and consents and submits to personal jurisdiction in the State and/or federal courts of Illinois and consents to venue in any county in which AT&T CAPITAL SERVICES, INC. maintains an office. This Guaranty shall bind the heirs, representatives, successors and assigns of the undersigned

IN WITNESS WHEREOF, the undersigned have hereunto set their hands and seals
this _____ day of _____, 20_____.
(Signatures must be as individuals -- not as company officials)

_____                    _____
Witness                                       NITESH PATEL (Individual Signature)

                                              x
                                              _____
                                              Home Address


_____                    _____
Witness                                       NICHOLAS M. LUCIA (Individual Signature)

                                              _____
                                              Home Address

PERSONAL GUARANTY
10-16-00

_____
Witness

_____
Witness

_____
NATALIE T. LUCIA (Individual Signature)

_____
Home Address

_____
(Individual Signature)

_____
Home Address